UNITED STATES of America, Appellee,

v.

Jose Enrique REYES,
Defendant, Appellant.

No. 90–2089.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1990.

Decided March 7, 1991.

Raymond Rivera, San Juan, P.R., by appointment of the Court, for defendant-appellant.

Antonio R. Bazán, Asst. U.S. Atty., with whom Daniel F. López Romo, U.S. Atty., was on brief, for appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and COFFIN, Senior Circuit Judge.

TORRUELLA, Circuit Judge.

On March 23, 1990, appellant José Enrique Reyes and co-defendant Pedro Julio Belilla were arrested as they tried to smuggle approximately seventy illegal aliens into United States territory from the Dominican Republic aboard a thirty-foot boat. A federal grand jury for the district of Puerto Rico returned an indictment on March 29, 1990, charging them with five counts of violating Section 1324(a)(1)(A) of Title 8 of the United States Code. On June 15, 1990, Reyes and Belilla both entered into plea agreements with the government, whereby they plead guilty to the first count of each of their indictments. As a result thereof, counts two through five were dismissed.

The district court referred the cases to the Probation Office for the preparation of a presentence investigation report. The probation officer recommended an adjustment to the base offense level for the defendants' leadership of their illegal enterprise. The officer based his recommendation on the proffer of evidence tendered by the government at the change of plea hearing, wherein it was submitted that had the case gone to trial a number of other passengers would have testified that Reyes and Belilla had copiloted the boat which had brought them to Puerto Rico. Moreover, the probation officer advised the court not to grant reductions for acceptance of responsibility, since the defendants' guilty pleas, conditioned upon unrelenting denials of their primary role in the commission of the offense, did not clearly demonstrate an affirmative acceptance of personal responsibility for their criminal conduct. Finally, the report urged the court to consider an upward departure, given that Reyes and Belilla's criminal conduct involved the reckless endangerment of human lives. The defendants filed written objections to the presentence investigation report and then argued their disagreement orally at the sentencing hearing on October 26, 1990.

At the conclusion of the sentencing hearing, the court adopted all of the recommendations outlined by the probation officer in the presentence investigation report. Pursuant to § 2L1.1(a) of the Sentencing Guidelines, the sentencing court determined that a violation of 8 U.S.C. § 1324(a)(1)(A) carried with it a base offense level of nine. *See* United States Sentencing Commission, *Guideline Manual*, § 2L1.1(a) (Nov.1990) [hereinafter U.S.S. G.]. Citing defendants' leading role in the commission of the offense, the court made a two-level upward adjustment, arriving at a base offense level of eleven. *See* U.S. S.G. § 3B1.1(c). As suggested by the probation officer, defendants' halfhearted guilty pleas were not considered as demonstrating an acceptance of responsibility sufficient to warrant a downward adjustment and, thus, the base offense level was left undisturbed. However, the court then de-

parted upward on the ground that Reyes and Belilla had placed the lives of a considerable number of people at great risk, and sentenced defendants to thirty-six months imprisonment. (The sentencing range for a base offense level of eleven is eight to fourteen months, while thirty-six months is near the top of level nineteen and close to the midpoint of level twenty). Only Reyes has appealed, assigning error to all three steps in the reasoning of the sentencing court.

## I

■ The standard of review for the sentencing court's upward adjustment for appellant's leading role in the offense and its denial of a downward adjustment for acceptance of responsibility is clear error. *United States v. Iguaran–Palmar,* 926 F.2d 7, 9 (1st Cir.1991) (adjustments to the base offense level are subject to the "clearly erroneous" standard of review); *United States v. Wells,* 922 F.2d 54, 56 (1st Cir. 1991) (same).

■ Appellant first claims that the sentencing court portrayed him as a leading participant of the illegal alien smuggling ring on the basis of insufficient evidence. A review of the record, however, reveals that these are hollow words. The government's proffer of evidence established that a number of passengers stated that Reyes and Belilla co-piloted the two-day trip from the Dominican Republic to the West Coast of Puerto Rico; that throughout the trip both appellant and his co-defendant were the persons in control of the boat; that during the trip they gave specific instructions as to where and how to sit when the seas got rough; and that the appellant and his co-defendant additionally operated the engines, steered and bailed the vessel. We have previously found less enthusiastic assistance to be demonstrative of at least "an active role" in the commission of the crime. *See United States v. Trinidad de la Rosa,*

916 F.2d 27, 29 (1st Cir.1990). Quite aside from the *Trinidad de la Rosa* case, however, we do not find, on the basis of these undisputed facts, that the district court clearly erred when it concluded that Reyes played a leading role in the illegal alien smuggling trip.

■ We pause momentarily to express our concern over a practice which has become increasingly common in cases involving illegal alien smuggling from the Dominican Republic to Puerto Rico and which must decisively come to an end. Recent cases have seen the government label as "captains" (and consequently push for upward departures at sentencing based on a defendant's leading role in the offense) individuals whose sole participation in the illegal alien smuggling venture has been occasionally to steer the vessel in which the illegal aliens were brought. It should not require comment, however, that not everyone who lays his or her hand on the helm of a vessel can justly be considered the ship's "captain" for purposes of determining his or her role in the commission of the offense. Similarly, the concept of co-captain, as used by the government in the instant case, is extraneous to common sense, as it is also beyond peradventure that there can be but one captain to a ship.[1] While this case falls just outside of this detrimental practice, it is sufficiently akin to its troublesome trend to warrant these cautionary remarks. We instruct sentencing courts that, henceforth, whenever the government attempts to ascribe principal status to a defendant in an illegal alien smuggling case, special care must be taken to ensure that the defendant's role was in fact as the government has alleged.

■ Appellant's second claim is that the sentencing court erred in denying him two-level downward adjustment for acceptance of responsibility. The court's refusal was presumably based on the fact that in objecting to the presentence investigation report Reyes denied being the captain of the

---

**1.** Our point is that what counts is not some meaningless label but *factual evidence* proving that an individual performed a true leadership role, in other words, facts establishing that by himself or with others, the defendant played a leading part in operating or navigating the boat, or in otherwise managing and directing the illegal alien venture itself.

vessel, a fact he allegedly stipulated to at the time he signed the government's version of the events. Emphasizing, as we have above, that to captain and to co-pilot a ship are two entirely different things, Reyes argues that there is no inconsistency between his original stipulation to the fact that he co-piloted the boat and his subsequent denial of the government's contention that he was the captain of the ship in the true sense of the word. This being the case, he argues, his plea of guilty should have resulted in a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

■ The simple answer to appellant's argument is this. The Sentencing Guidelines authorize trial courts to grant a two-level reduction to a defendant's base offense level only "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct ..." U.S.S.G. § 3E1.1(a). A defendant's guilty plea is only one factor, among many, to be considered by the sentencing court in making this determination. *United States v. Bradley*, 917 F.2d 601, 606 (1st Cir.1990). In fact, the Guidelines caution that "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction ... as a matter of right." U.S.S.G. § 3E1.1(c). The record in this case is most notable for the fact that a genuine feeling of remorse is conspicuously lacking. Although appellant might have confessed to his role as co-pilot at the time he signed his plea agreement with the government, his feeling of repentance did not endure past this preliminary stage. In his allocution, appellant only repeated his persistent denial of being the captain of his vessel but said nothing about his role as a co-pilot. While we agree with him that this fact denotes no contradiction with his prior statement, it does reflect a continuous desire to minimize his responsibility for the crime. It must also be remembered that "because the sentencing judge has the unique opportunity of observing the defendant, hearing his allocution, and evaluating acceptance of responsibility in a live context against the backdrop of the case as a whole," *United States v. Royer*, 895 F.2d 28, 29 (1st Cir.1990), his or her determination "is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5). Under the circumstances recounted above, we cannot say that the sentencing court's refusal to grant appellant a reduction for acceptance of responsibility amounted to clear error.

## II

As a third assignment of error, appellant objects to the sentencing court's decision to depart from the sentencing guidelines. The propriety of the sentencing court's departure from the applicable guideline range is, of course, reviewed in accordance with the tripartite test established in *United States v. Díaz–Villafañe*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). *See Trinidad de la Rosa*, 916 F.2d at 29. The first step requires us to determine whether the case presents "unusual circumstances" not adequately considered by the Sentencing Commission in formulating the Guidelines and sufficient to remove appellant's case from the "heartland" demarcated by the Commission for the offense of conviction. *United States v. Sklar*, 920 F.2d 107, 114 (1st Cir.1990). At the first step of the *Díaz–Villafañe* analysis, our review is plenary. *United States v. Aguilar–Peña*, 887 F.2d 347, 350 (1st Cir.1989).

■ The sentencing court decided to depart upward citing three primary circumstances: (1) the nature of the offense, (2) the potential tragic consequences of the same, and (3) the reckless endangerment of human lives. While we are hard pressed to see how "the nature of the offense" can ever be regarded as a circumstance not considered by the Sentencing Commission, we believe circumstances two and three (which, in other words, collectively refer to the dangerous circumstances created by the placing of a large number of human beings aboard an unsafe vessel to cross a treacherous body of water) are sufficient to justify a departure. The recently amended Application Note 8 to § 2L1.1 states that "[t]he Commission has not considered offenses involving large numbers of aliens **or**

dangerous **or** inhumane treatment. An upward departure should be considered in those circumstances." U.S.S.G. § 2L1.1, comment. (n. 8) (emphasis supplied). This directive thus effectively forecloses further inquiry into step one of the *Díaz–Villafañe* analysis. In fact, although the smuggling of aliens aboard open boats from the Dominican Republic to Puerto Rico does not necessarily implicate inhumane treatment,[2] such offenses ordinarily involve a large number of aliens aboard unseaworthy vessels and under dangerous conditions, circumstances which might justify a departure in almost every case.

The second step of the *Díaz–Villafañe* analysis requires us to ascertain whether the court's determinations enjoy adequate record support. *United States v. Ocasio,* 914 F.2d 330, 335 (1st Cir.1990). Appellant submits that no evidence regarding the vessel's unseaworthiness was submitted to the court and that, this being the case, the fact that the vessel survived the voyage to Puerto Rico should bear witness to its seaworthiness. Similarly, appellant contends that the record is also devoid of evidence regarding the alleged perilous circumstances surrounding the trip.

With regard to appellant's first contention, we observe that the sentencing court did have sufficient evidence from which it could have reasonably concluded that the vessel was unseaworthy, to wit, that unlike other vessels routinely intercepted by the marine authorities, appellant's boat had to be dismantled because immigration officials concluded that it was unsafe. That such an unsafe vessel completed a fifty-mile ocean voyage, in our view, only bears witness to the good fortune appellant encountered during the course of his trip.

In what pertains to appellant's second claim, we note that a reasonable factfinder need not be presented with specific factual accounts of what transpired during the voyage to be able to conclude that the trip was conducted under dangerous circumstances. The court was presented with the fact that seventy persons were crowded into an unsafe, thirty-foot, wooden boat for a fifty-mile trip across a treacherous, shark-infested body of water which took two full days. These circumstances, amply supported by the record, provide an adequate foundation for the sentencing court's finding that during the course of his criminal endeavor appellant recklessly endangered the lives of other human beings.

Finally, under the third step, the degree of the departure must be measured by a standard of reasonableness. *United States v. Scott,* 915 F.2d 774, 777 (1st Cir. 1990).[3] The departure in the instant case, to be sure, was significant, as appellant received a prison term which almost tripled

**2.** *See Trinidad de la Rosa,* 916 F.2d at 30, where we stated that the smuggling of aliens from the Dominican Republic to Puerto Rico under conditions similar to the ones at bar need not necessarily imply "inhumane treatment." In that case, we eliminated a sentencing court's upward departure based on a finding of "inhumane treatment" under the old version of Commentary 8 to § 2L1.1. However, the previous version of Commentary 8 required (and the sentencing court found) the concurrence of both "a large number of aliens" *and* "inhumane treatment" for the court to consider an upward departure, a requirement which is no longer embodied by the sentencing guidelines and is thus inapplicable to this case.

**3.** At this juncture in his argument, appellant mounts an attack against his sentence on equal protection grounds, which we must briefly address. Appellant argues that, just as the usual means by which illegal aliens are brought into the United States from countries with which the United States shares a border is some type of ground motor vehicle, the usual means by which illegal aliens are brought into the United States from the Dominican Republic is by way of open boats. If the departure based on the means employed to smuggle aliens is allowed to stand, a disparity in sentencing will occur, since smugglers of illegal aliens operating from Mexico and Canada would get lighter sentences than those operating from islands in the Caribbean. Appellant argues such a disparity could amount to a violation of the equal protection clause since defendants tried in Puerto Rico would be subject to harsher penalties than those tried in other states for similar violations of law.

Clever though it may be, appellant's argument does not withstand scrutiny. The departure in the instant case was not imposed on the basis of the "means" appellant utilized to smuggle aliens, but as a result of the dangerous conditions surrounding the operation. Had a safer means been employed, we would have undoubtedly reached a different result. Cases upholding departures on the basis of dangerous and inhumane treatment in the smuggling of aliens across land borders serve to prove our point.

the term provided by the guideline range. As stated in the third-prong of the *Díaz–Villafañe* analysis, decisions to depart "are not to be lightly disturbed," *United States v. Harotunian*, 920 F.2d 1040, 1047 (1st Cir.1990). "[A]ppellate review must occur with full awareness of, and respect for, the trier's superior 'feel' for the case." *Díaz–Villafañe*, 874 F.2d at 49–50. The sentencing court was presented with a scenario highlighting a callous disregard for the safety of fellow human beings and calling for a sentence that would be proportionate to the same. Although tragic consequences were fortunately averted, appellant's criminal conduct could have conceivably resulted in the death of seventy other persons. The district court's estimation of the sentence that would best reflect the seriousness of the crime was therefore not unreasonable.[4]

*Affirmed.*

See, e.g., *United States v. Gómez*, 901 F.2d 728 (9th Cir.1990) (departure based on dangerous and inhumane treatment upheld where appellant smuggled eight illegal aliens across the Mexican border in a six-foot wide, six-foot long, and two-foot deep hidden compartment); *United States v. Lira–Barraza*, 897 F.2d 981 (9th Cir. 1990) (departure based on dangerous circumstances upheld where appellant smuggled aliens in the trunk of his car across the Mexican border, leading agents on a twelve-mile chase at speeds reaching ninety miles per hour).

4. See *Díaz–Villafañe*, 874 F.2d at 51–52 (upholding departure from 27–33 month range to 120 months); *United States v. Rodríguez–Cardona*, 924 F.2d 1148, 1156 (1st Cir.1991) (upholding departure from 41–51 month range to 135 months). Cf. *Gómez*, 901 F.2d 728 (departure from a 1–7 month range to 24 months for reckless endangerment of human lives in illegal alien smuggling case held reasonable); *Lira–Barraza*, 897 F.2d 981 (departure from 0–4 month range to 36 months under similar circumstances held reasonable).