UNITED STATES of America, Appellee,

v.

Antonio TRINIDAD–LOPEZ,
Defendant, Appellant.

No. 92–1359.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1992.

Decided Nov. 6, 1992.

Miguel A.A. Nogueras–Castro, Asst. Federal Public Defender, with whom Benicio Sanchez Rivera, Federal Public Defender, was on brief for defendant, appellant.

José A. Quiles Espinosa, Senior Litigation Counsel, with whom Daniel F. Lopez Romo, U.S. Atty., and Hernan Ríos, Jr., Asst. U.S. Atty., were on brief for appellee.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Appellant Antonio Trinidad–Lopez pled guilty to one count of a two-count indictment charging him with attempting to bring aliens into the United States in violation of 8 U.S.C. § 1324(a)(1)(A)[1] and was sentenced to twenty-four months in prison and three years on supervised release. Appellant challenges the district court's application of the sentencing guidelines in two particulars, contending that the court erred in denying a three level reduction in the base offense level pursuant to U.S.S.G. § 2L1.1(b)(1) and in departing above the applicable guideline sentencing range ("GSR"). We affirm.

## I

## BACKGROUND

On October 27, 1991, the United States Border Patrol intercepted a wooden yawl off the coast of Rincón, Puerto Rico, a place other than a designated port of entry for aliens into the United States. On board the vessel were 104 aliens from the Dominican Republic. The yawl, which was approximately thirty-five feet in length, contained no food, life jackets, navigational equipment, or charts; it fell apart shortly after it was intercepted. Appellant was arrested and identified as the master of the vessel. Ultimately, he was indicted and pled guilty to count one of the indictment; count two was dismissed pursuant to a plea agreement.

At sentencing, appellant objected to two statements of fact contained in the presentence report ("PSR"): that he was a captain for the "Lolo" organization and that he had brought hundreds or thousands of illegal aliens to Puerto Rico in the past.[2] A special agent of the Immigration and Naturalization Service ("INS") testified that, as part of an ongoing investigation of alien smuggling, the INS was developing an organization chart of the Lolo organization based on information obtained from its informants and members of the organization who had been arrested. The INS agent identified appellant, known by the nickname "Cubian," as one of the main boat captains for the Lolo organization. According to the agent, Lolo typically receives payment directly from the aliens; the organization pays the captains for each trip. The agent testified that appellant had been arrested earlier in the year for transporting ninety-three illegal Dominican aliens to the island of Desecheo, Puerto Rico, but was never indicted because none of the aliens would testify against him.

The district court based appellant's sentence on the testimony of the INS agent and the information in the PSR. Under U.S.S.G. § 2L1.1(a)(2), offenses involving smuggling, transporting, or harboring illegal aliens, see 8 U.S.C. § 1324(a)(1)(A), are assigned a base offense level of nine. The PSR recommended a three level reduction pursuant to U.S.S.G. § 2L1.1(b)(1) because

---

**1.** Section 1324(a)(1)(4)(A) provides:
(1) Any person who—
    (A) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry ..., regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien, ... shall be fined ... or imprisoned not

more than five years, or both, for each alien in respect to whom any violation of this paragraph occurs.
8 U.S.C. § 1324(a)(1)(A).

**2.** According to the testimony of an Immigration and Naturalization Service agent, the "Lolo Smuggling Organization," also known as the "Nunez Smuggling Organization," conducts one of the largest alien smuggling operations in the Dominican Republic.

the probation officer found no evidence that the offense was committed for profit. The court declined to allow the three level reduction, however, finding instead that "money was involved in this alien-smuggling operation and that the master of the smuggling boat, the [appellant], did not work for free." The court increased the base offense level by two levels pursuant to U.S.S.G. § 3B1.3 because appellant, as captain of the vessel, brought to the illegal enterprise special skills necessary to its execution. The court granted a two level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Thus, an adjusted offense level of nine, combined with a category I criminal history, yielded a 4–to–10 month GSR. The court further determined, however, that an upward departure was warranted and sentenced appellant to twenty-four months in prison, three years of supervised release, and a special monetary assessment of $50.

## II

## DISCUSSION

A. *U.S.S.G. § 2L1.1(b)(1)*

■ Appellant argues that the district court erred in denying a downward adjustment in the base offense level pursuant to U.S.S.G. § 2L1.1(b)(1), which provides for a decrease of three levels if the defendant smuggled, transported, or harbored an unlawful alien *other than for profit*. Application Note 1 explains that " '[f]or profit' means for financial gain or commercial advantage, but ... does not include a defendant who commits the offense solely in return for his own entry or transportation." Appellant argues that he is entitled to the three level reduction because he did not charge the aliens for the trip and there was no evidence that he was paid by the "Lolo" organization; that, on the contrary, he piloted the vessel solely in return for his own transportation, and that of his wife. Appellant contends that the court improperly relied on allegations by an "unreliable confidential informant" in finding that the Lolo organization paid him for the journey.

■ The trial court's application of the sentencing guidelines to the facts is reviewed for "clear error," *United States v. Camuti*, 950 F.2d 72, 74 (1st Cir.1991); *United States v. Preakos*, 907 F.2d 7, 8 (1st Cir.1990); *United States v. Wright*, 873 F.2d 437 (1st Cir.1989), which entails due respect for the trial court's superior opportunity to judge the credibility of the witnesses, as well as "due deference to [its] application of the guidelines to the facts." 18 U.S.C. § 3742(e).

■ The validity of any claim of entitlement to a downward adjustment in the base offense level must be demonstrated by the defendant, *United States v. Ortiz*, 966 F.2d 707, 717 (1st Cir.1992); *United States v. Bradley*, 917 F.2d 601, 606 (1st Cir.1990); *United States v. Ocasio*, 914 F.2d 330, 332 (1st Cir.1990), by a preponderance of the evidence. *Cf. United States v. Corcimiglia*, 967 F.2d 724, 726 (1st Cir. 1992); *United States v. David*, 940 F.2d 722, 739 (1st Cir.1991) (preponderance of evidence standard applicable to issues of fact relating to sentencing), *cert. denied*, — U.S. —, 112 S.Ct. 605, 116 L.Ed.2d 628 (1991) and *cert. denied*, — U.S. —, 112 S.Ct. 908, 116 L.Ed.2d 809 (1992) and *cert. denied*, — U.S. —, 112 S.Ct. 1298, 117 L.Ed.2d 520 (1992) and *cert. denied*, — U.S. —, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992). The government is not required to establish defendant's disentitlement, as appellant assumes.

Appellant offered no evidence that would support a downward adjustment. In fact, in his attempt to convince the court that he accepted responsibility for the offense, appellant admitted to three such trips and stated, "I have done it for money." Moreover, the INS agent testified that it is the established practice of the Lolo organization to collect payment directly from the alien passengers and to pay the captain for each trip. According to the agent, an ongoing INS investigation revealed that the appellant was one of the main captains for the Lolo organization and that he had been apprehended and arrested under very similar illegal circumstances on an earlier occasion. We cannot conclude that the court

committed clear error in crediting competent testimony from official investigative sources concerning Lolo organization practice, as to which no objection was asserted at sentencing and appellant produced no countervailing evidence. Since appellant did not establish the grounds for a downward adjustment, the refusal to allow the three level reduction pursuant to U.S.S.G. § 2L1.1(b)(1) did not constitute error.

### 2. *Upward Departure*

Appellant next challenges the upward departure from the GSR, which we review under the tripartite framework established in *United States v. Diaz–Villafane,* 874 F.2d 43, 49–50 (1st Cir.1989), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). *See, e.g., United States v. Figaro,* 935 F.2d 4, 7 (1st Cir.1991); *United States v. Reyes,* 927 F.2d 48, 51 (1st Cir.1991); *United States v. Trinidad de la Rosa,* 916 F.2d 27, 29–30 (1st Cir.1990).

#### a. Step One: Unusual Circumstances

■ First, the determination that the relevant circumstances were unusual enough to warrant a departure is subject to *de novo* review. *Diaz–Villafane,* 874 F.2d at 49. *See also Figaro,* 935 F.2d at 6; *Reyes,* 927 F.2d at 52. The sentencing court based its departure on three factors: "the large number of aliens involved," "the dangerousness of the journey," and the finding that appellant's criminal history

category underrepresented the magnitude of his criminal conduct in light of a prior arrest for similar conduct.[3] Application note 8 to U.S.S.G. § 2L1.1 plainly states that "[t]he Commission has not considered offenses involving large numbers of aliens *or* dangerous *or* inhumane treatment. An upward departure should be considered in those circumstances." (Emphasis added.) Thus, "[t]his directive effectively forecloses further inquiry into step one of the *Diaz–Villafane* analysis" once the sentencing court invokes any listed circumstance as a ground for departure. *Reyes,* 927 F.2d at 52; *see also Trinidad de la Rosa,* 916 F.2d at 30. Therefore, the first two grounds identified by the district court must be accepted as sufficiently unusual to warrant its consideration of a departure.

■ Although appellant contends that the third ground relied on by the sentencing court, the prior arrest, was improper, the sentencing guidelines provide otherwise.

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's ... past criminal conduct ..., the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include ... information concerning ... *prior similar adult criminal conduct not resulting in a criminal conviction.*

---

**3.** Appellant also argues that the district court improperly relied on "compounding social economic problems in the Dominican Republic." Although the sentencing judge alluded to social and economic problems in the Dominican Republic, we do not share appellant's view that the challenged departure was made to depend on these observations, which were carefully distinguished from the illegality and dangerousness of appellant's conduct. Although the court acknowledged the plight of illegal aliens desiring to enter the United States, the court emphasized that this did not mitigate the seriousness of appellant's offense. As the court stated in its Opinion and Order:

> While we can sympathize with the plight of those who might wish to enter our boundaries to seek a better life, we do not find the same kind of compassion for those who participate in the exploitation of others and who, for profit, transport these aliens under conditions

that in the end create the real possibility of loss of life, not to say the creation of other social problems inherent to this kind of operation.

Moreover, the court did not rely on socio-economic conditions in the Dominican Republic in recording its findings and conclusions on the upward departure:

> Specifically, we find that the departure is warranted based on the actual commission of the offense that led to the present indictment, based upon both the large number of aliens involved and the dangerousness of the voyage. Moreover, [appellant's] prior May 15, 1991 arrest after he landed 93 aliens in Desecheo Island, convinces us that his criminal history category of I underrepresents the magnitude of this defendant's criminal actions, another factor that must be considered by this court in setting the sentence.

U.S.S.G. § 4A1.3, p.s. (emphasis added). Thus, U.S.S.G. § 4A1.3 expressly permits the sentencing court to consider a departure where the criminal history category does not adequately reflect the seriousness of the defendant's prior criminal history, as shown by "reliable information," including similar adult conduct which did not result in a conviction.

### b. Step 2: Factual Undergirding

■ Under the second step in the *Diaz-Villafane* analysis, we review for clear error all findings of fact material to the challenged departure. *Figaro*, 935 F.2d at 6. *See Diaz–Villafane*, 874 F.2d at 49. The evidence relating to the first two grounds for departure identified by the court, the "large number of aliens" and the "dangerousness of the journey," is not in dispute. Thus, the district court did exactly as invited by the Commission, *see* U.S.S.G. § 2L1.1, comment. (n.8), as there can be no question that the transportation of 104 aliens through the Mona passage in a thirty-five foot yawl designed to carry no more than fifteen passengers, without food, life jackets, navigational equipment, or charts, constitutes an offense involving a large number of aliens and dangerous and inhumane treatment as contemplated by the guideline, *see id.*[4]

The evidence—appellant's prior arrest—supporting the third ground for departure, *see* U.S.S.G. § 4A1.3, p.s., is not contested either. Appellant does not deny that he was arrested on May 15, 1991, after landing ninety-three illegal aliens on Desecheo Island, Puerto Rico. Nor does he challenge the reliability of the information relating to the details of the incident. The same INS agent was the source of this information, as he had been the officer in charge of the May, 1991 investigation as well. The agent verified appellant's arrest based on a Coast Guard report and testified that appellant was one of three individuals apprehended by the Coast Guard immediately after the ninety-three illegal aliens were landed on Desecheo Island. Although the record contains no information about the conditions aboard the vessel used for the May, 1991 passage, it clearly involved the illegal smuggling of a large number of aliens into the United States. Since the court grounded its departure decision on reliable information sufficient to demonstrate that appellant previously had engaged in similar adult criminal conduct that did not result in a criminal conviction, the evidentiary basis for its U.S.S.G. § 4A1.3 departure decision was sufficient.

### c. Step 3: Reasonableness

■ Under the third prong of the *Diaz-Villafane* test, we weigh whether the degree of the departure was reasonable in the circumstances, according considerable deference to the district court decision. *Diaz–Villafane*, 874 F.2d at 49–50; *see also Figaro*, 935 F.2d at 6. The twenty-four month sentence imposed by the district court is more than twice that allowed at the upper limit of the 4–to–10 month GSR. We recognize, nonetheless, that fortuity was the only impediment to tragedy for the 104 passengers who were traveling without life jackets in an egregiously unsafe and overburdened wooden boat through the treacherous waters of the Mona passage. Moreover, the district court was faced with an underrepresentative offense level *as well as* an underrepresentative criminal history category. Appellant's criminal conduct in connection with the offense of conviction contributed to the endangerment of more than 100 passengers only months after having engaged in

---

4. We have held that 50 passengers are enough to satisfy the "large number" requirement in application note 8, *Trinidad de la Rosa*, 916 F.2d at 30, and that the court may take judicial notice that carrying 54 people in a 34–foot yawl creates a dangerous condition. *Id.* at 30. *See also United States v. Diaz–Bastardo*, 929 F.2d 798, 799 (1st Cir.1991). The dangerousness inherent in crowding twice as many people into such a yawl is incontrovertible, as appellant concedes.

Appellant nonetheless argues that he should not be held accountable for any dangerousness, because the aliens were not forced to make the journey and he had no control over, nor did he contribute to, the dangerous conditions aboard the vessel. Appellant does not deny that he was the master of the yawl, however. Thus, he is ill-positioned to argue that he is not partially responsible for exposing ·the passengers to the dangers of the Mona passage in such a vessel.

similar illegal conduct involving ninety-three passengers. In these circumstances, the degree of departure cannot be considered unreasonable. *See, e.g., id.,* 935 F.2d at 8–9 (upholding departure, under similar circumstances, from 0–6 month GSR to 18 months); *Reyes,* 927 F.2d at 52–53 (upholding departure from 8–14 month GSR to 36 months).

*Affirmed.*