7 F.3d 219
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Luis A. COLON-RIVERA, Defendant, Appellant.
UNITED STATES, Appellee,
v.
Jose Alberto ACEVEDO-GUZMAN, Defendant, Appellant.
 Nos. 92-2205, 92-2206.
 United States Court of Appeals,
First Circuit.
 Sept. 9, 1993.
 
 APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
 Gustavo Adolfo Del Toro on brief for appellant Luis A. Colon-Rivera.
 H. Manuel Hernandez on brief for appellant Jose A. Acevedo-Guzman.
 Charles E. Fitzwilliam, United States Attorney, Jose A. Quiles-Espinosa, Senior Litigation Counsel, and Edwin O. Vazquez, Assistant United States Attorney, on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before Breyer, Chief Judge, Torruella and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 Appellants Jose Alberto Acevedo-Guzman ("Acevedo") and Luis A. Colon-Rivera ("Colon") each pled guilty to one count of committing bank robbery, see 18 U.S.C. §§ 2113(a), 2113(d), and one count of using firearms during the commission of such crime. See 18 U.S.C. § 924(c)(1)(3). Acevedo and Colon challenge their respective sentences on grounds that the sentencing judge committed various errors in applying the Sentencing Guidelines to their cases. We affirm.
 
 
 2
 * Background
 
 
 3
 In the presentence report and at the change of plea hearing, the United States proffered the following evidence of the appellants' guilt. On January 3, 1992, at approximately 9:30 a.m., Colon and Acevedo arrived at the doors of the Banco Santander de Puerto Rico, Laguna Gardens Branch. Upon encountering a bank security guard, Colon struck the security guard on the head with a revolver and dragged him inside the bank. Colon and Acevedo, armed and wearing masks, then entered the bank, along with two other perpetrators, and announced a bank robbery. Colon and Acevedo jumped over the tellers' counter and proceeded to take money from the bank tellers' drawers. During this time, Acevedo instructed Colon as to which money be taken in order to avoid dye packs. He also struck one of the tellers in the back with his weapon, threatened to kill all of them, and asked the tellers where the bank manager was. Thereafter, Acevedo went to the manager's office, grabbed the manager by the hair, and asked for the combination to the vault, from where he took almost $30,000.
 
 
 4
 After leaving the bank, the four men attempted to make their get-away in a Mitsubishi Mirage, which Acevedo had helped to steal two days earlier. Their attempt was quickly stymied when a dye pack exploded inside the car, forcing them to abandon it. They then carjacked a Chevrolet Cavalier station wagon from a passing motorist, and headed towards the San Jose lagoon. At the lagoon, they boarded a small boat in an attempt to escape. Their escape route was blocked by a police helicopter, whose pilot observed five people on the vessel. Shots were fired at the helicopter from the boat, and Colon, in particular, was observed firing an AR-15 rifle at the helicopter. The boat then turned back to the lagoon. Before surrendering himself, Colon was seen shooting towards the police officers on the ground.
 
 
 5
 On June 22-23, 1992, the appellants each pled guilty to both counts of the indictment. Acevedo was sentenced to a term of 235 months on the first (bank robbery) count, and a consecutive term of 60 months on the second (firearms) count. In arriving at this amount, the sentencing judge determined that Acevedo had played a leadership role in an offense involving five participants; he therefore increased the offense level by four. See U.S.S.G. § 3B1.1(a). He also found that Acevedo had not accepted responsibility for his involvement in the offense, and thus denied a two-level decrease. See U.S.S.G. § 3E1.1(a). Colon was sentenced to a term of 175 months imprisonment on the first count, and 60 months as to the second, to be served concurrently. In setting this sentence, the judge awarded a seven-level increase after finding that a revolver was discharged during the robbery, see U.S.S.G. § 2B3.1(b)(2)(A), and a two level increase after finding that Colon had recklessly created grave risks to others in the course of fleeing from a law enforcement officer. See U.S.S.G. § 3C1.2.
 
 II
 Acevedo
 
 6
 Acevedo argues that the sentencing judge erred by enhancing his offense level for his alleged leadership role in the crime, and by declining to reduce his offense level for his acceptance of responsibility. We disagree.
 
 A. Leadership Role
 
 7
 The sentencing judge found that Acevedo was an "organizer or leader" of a criminal activity that involved five or more participants, and imposed a four-level enhancement, as authorized by U.S.S.G. § 3B1.1(a). Appellant attacks this enhancement on grounds that (1) he had a co-equal role in the offense, and (2) there is insufficient evidence to establish that the offense involved five or more participants.
 
 
 8
 We find that the district court had ample evidence to support its conclusion. See United States v. Wright, 873 F.2d 437, 443 (1st Cir. 1989) (district court's application of the "role in the offense" guidelines to the particular facts of each case should, absent mistake of law, be reviewed only for clear error). Acevedo's leadership was demonstrated by his prominent role in orchestrating the heist. See U.S.S.G. § 3B1.1, Application Note 3 (in determining whether a defendant had a leadership or organizational role within the meaning of this provision, the court considers such factors as "the nature of participation in the commission of the offense"). After jumping over the tellers' counter with Colon, it was Acevedo who gave orders to Colon as to which money to take in order to avoid the dye pack. Acevedo engaged in other conduct critical to the enterprise that apparently no one else did, such as procuring the get-away car, threatening to kill the tellers, asking them for the bank manager, asking the bank manager for the vault combination, and taking the money out of the safe. See United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990) (§ 3B1.1 enhancement applies if defendant "exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime").
 
 
 9
 We also reject Acevedo's contention that there was insufficient evidence for the sentencing judge to conclude that there were five or more participants involved in the offense. According to the record, the helicopter pilot who intercepted the fleeing boat asserted that he observed five individuals aboard it. Such evidence was properly considered by the sentencing judge. See U.S.S.G. § 6A1.3 (sentencing court may consider all pertinent information which has "sufficient indicia of reliability to support its probable accuracy"). Furthermore, the judge's determination as to its reliability is entitled to considerable deference. See United States v. Bradley, 917 F.2d 601, 605 (1st Cir. 1990).
 
 B. Acceptance of Responsibility
 
 10
 We also find that the district court did not clearly err in finding that Acevedo had not accepted responsibility for his criminal conduct, and in refusing to reduce his offense level by two. See United States v. Reyes, 927 F.2d 48, 50 (1st Cir. 1991) (denial of a downward adjustment for acceptance of responsibility reviewed for clear error). The Sentencing Guidelines authorize trial courts to grant a two-level reduction to a defendant's base offense level only "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." See U.S.S.G. § 3E1.1(a). Although Acevedo did enter a guilty plea, this act alone does not entitle him to an adjustment as a matter of right. See U.S.S.G. § 3E1.1(c). Rather, a sentencing court considers a variety of factors in making this determination. See Reyes, 927 F.2d at 51. A defendant presents significant evidence of his acceptance of responsibility by-in addition to entering a guilty plea-truthfully admitting, or not falsely denying, his involvement in the offense and related conduct. See U.S.S.G. § 3E1.1, Application Note 3. At his sentencing hearing, however, Acevedo denied having played a leadership role in the offense, giving instructions to his cohorts inside the bank, threatening the bank teller, and grabbing the manager by the hair. See Reyes, 927 F.2d at 51 (no clear error to deny reduction for acceptance of responsibility for a defendant who, after being found to have had a leadership role in offense, attempted to minimize such role); United States v. Shipley, 963 F.2d 56, 59 (5th Cir.) (same), cert. denied, 113 S. Ct. 348 (1992). Moreover, the record here, as in Reyes, "is most notable for the fact that a genuine feeling of remorse is conspicuously lacking." Reyes, 927 F.2d at 51. When asked why he pleaded guilty, for example, Acevedo answered "because I had nothing in my favor so to speak," and when asked how he felt about participating in the robbery, he said that "I am repentant because I'm not able to see my family."
 
 II
 Colon
 
 11
 Colon contends that the sentencing judge erred by raising his offense level to reflect the discharge of a firearm and his reckless endangerment of others. We disagree.
 
 A. Firing Weapon
 
 12
 The district court enhanced Colon's offense level by seven levels, pursuant to U.S.S.G. § 2B3.1(b), which discusses "Specific Offense Characteristics," and authorizes an increase of such magnitude "[i]f a firearm was discharged." U.S.S.G. § 2B3.1(b)(2).
 
 
 13
 Colon challenges this enhancement on the ground that "[t]here is no evidence whatsoever that a firearm was discharged during the robbery." But the presentence report specifically states that Colon "was observed shooting the helicopter with an AR-15 rifle," and that "he also shot toward the police officers before surrendering." Colon may mean to argue that § 2B3.1(b)(2)(A) authorizes a seven-level increase only if a firearm was discharged during the actual robbery, i.e., while he and his cohorts were in the bank; since he fired his weapon after they had already left the bank, such an increase is not warranted. See U.S.S.G. § 2B3.1, Background ("Possession or use of a weapon ... sometimes occur[s] during a robbery. The guideline provides for a range of enhancements where th[is] factor[ ][is] present.") (emphasis added).
 
 
 14
 If this is Colon's intended argument, then it fails. The Sentencing Guidelines expressly state that a defendant's conduct in escaping detection or responsibility for an offense is to be considered in determining specific offense characteristics, and hence the Guideline offense level. See U.S.S.G. § 1B1.3(a)(1) ("[U]nless otherwise specified, ... specific offence characteristics ... shall be determined on the basis of ... all acts and omissions committed or aided and abetted by the defendant ... that occurred ... in the course of attempting to avoid detection or responsibility for that offense...."). Indeed, two sister circuits have specifically stated that a bank robber's conduct, and the consequences thereof, while fleeing the bank are considered for sentencing purposes as part of the offense. See United States v. Muhammad, 948 F.2d 1449, 1456 (6th Cir. 1991) (police officer injured by bank robber after he had fled the bank was a "victim" of the robbery within the meaning of U.S.S.G. § 2B3.1(b)(3), thereby warranting an increase in offense level), cert. denied, 112 S. Ct. 1239 (1992); United States v. Bates, 896 F.2d 912, 914-15 (5th Cir.) (rejecting as meritless argument that defendant's conduct during flight from bank he robbed was not part of offense while allowing upward departure on ground that post-robbery conduct was particularly egregious), cert. denied, 496 U.S. 929, 942 (1990).
 
 B. Reckless Endangerment during Flight
 
 15
 Colon also challenges the sentencing judge's decision to increase his offense level by two for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Although Colon does not state the precise ground of his challenge, he may have intended to contend that the judge enhanced his sentence twice for firing a weapon at the police, the first time being the seven-level increase under § 2B3.1(b)(2)(A). A double enhancement for the same conduct, however, would disregard the commentary to U.S.S.G. § 3C1.2, which states that judges should "not apply this enhancement where the offense guideline in Chapter Two ... results in an equivalent or greater increase in offense level solely on the basis of the same conduct." U.S.S.G. § 3C1.2, Application Note 1.
 
 
 16
 If this is Colon's argument, then it fails. Continuously firing a rifle, and carrying on a gunfight with the police in public, outside the bank, carries with it significantly greater risks to others than a simple shooting episode. Moreover, during his flight from the bank, Colon recklessly created grave risks to other individuals in ways other than simply firing at the police: he and his cohorts also crashed their get-away car into another vehicle, and carjacked another vehicle by holding its owner at gunpoint. These are more than sufficient to warrant an enhancement under § 3C1.2, without double counting.
 
 
 17
 For the foregoing reasons, the sentences imposed are
 
 
 18
 Affirmed.