**UNITED STATES of America,
Appellee,**

v.

**Husein KRCIC, Defendant–Appellant.**

**Docket No. 98–1667.**

United States Court of Appeals,
Second Circuit.

Argued June 4, 1999.

Decided July 26, 1999.

world a series of huge problems. This case, a spin-off so to speak, presents sympathetic aspects but the immigration laws have a certain inexorability, and the facts this case presents are brief, cold, and ultimately unavailing to the appellant.

Appellant Husein Krcic was convicted by a jury of alien[1] smuggling under 8 U.S.C. § 1324. He was sentenced by the United States District Court for the District of Vermont (William K. Sessions III, *Judge*) to a term of incarceration of four months, which was the minimum term under the U.S. Sentencing Guidelines Manual for a base offense level of 9.

On appeal, Krcic argues that the district court should have decreased his base offense level by three, in accordance with Section 2L1.1(b)(1) of the U.S. Sentencing Guidelines Manual (1997), because he did not smuggle the aliens "for profit." Because we find that the district court's determination that Krcic smuggled the aliens for profit was not clearly erroneous, we affirm the district court.

*Background*

On January 4, 1996, United States border officials arrested Jerry Jean Bilodeau for guiding two aliens, Hakija Kandic and Jahja Markovic, into the United States from Canada. Bilodeau cooperated with the government in the ensuing investigation and identified Krcic as the person who recruited and paid him to transport the two aliens.

The investigation revealed that Krcic approached Bilodeau on two separate occasions to guide aliens across the Canadian border. Bilodeau testified that, in December of 1995, after being solicited by Krcic to escort aliens across the border, he met Krcic north of the United States border, and Krcic introduced Bilodeau to a woman whom Bilodeau was to walk over the border and bring to a rest area on Route 91 in

Christina Jensen, Burlington, VT (Mark D. Oettinger, Lisman & Lisman, P.C., of counsel), for Defendant–Appellant.

William B. Darrow, Assistant United States Attorney, Burlington, VT (Charles R. Tetzlaff, United States Attorney, David V. Kirby, Chief, Criminal Division, of counsel), for Appellee.

Before OAKES and WALKER, Circuit Judges, and GOLDBERG,* Court of International Trade Judge.

OAKES, Senior Circuit Judge:

*Introduction*

In the bigger picture, the collapse—for want of a better word—of Yugoslavia as a united nation and the ensuing conflicts have brought to much of the rest of the

---

* Honorable Richard W. Goldberg, Judge of the Court of International Trade, sitting by designation.

1. For purposes of this opinion, we ascribe to the word "alien" the meaning ascribed in 8 U.S.C. § 1324.

Vermont. There Krcic was to meet Bilodeau and the woman. This smuggling went according to plan, and Krcic paid Bilodeau $300.

With respect to the unsuccessful January 4, 1996, smuggling, Bilodeau testified that Krcic had arranged for Bilodeau to go to a place north of the Canadian border to receive two aliens. When Bilodeau went at the specified time, Krcic was not there, but two men were, and they turned over to Bilodeau Kandic and Markovic. They also gave Bilodeau two $100 bills as advance payment, and Bilodeau was to be paid the remaining $400 at the Route 91 Exit 23 McDonald's in Lyndonville, Vermont, after he arrived there with the two aliens. Bilodeau was arrested with the aliens prior to the successful completion of his mission.

Border records confirmed that a car registered to Krcic entered Champlain, New York, from Canada on the evening of January 4. Krcic's phone records established that, after Krcic's car entered New York on January 4 and into the morning of January 5, someone made multiple collect calls to Krcic's home phone from pay phones at locations between Champlain, New York, and Lyndonville, Vermont. It is the government's theory that Krcic drove to the pick-up point, but Bilodeau and the aliens (having been arrested) were not there. Krcic, not knowing of the arrest, repeatedly called his spouse to see if she had heard from Bilodeau.

The investigation revealed facts that implicated Sadrija Radoncic from New York City in this smuggling. Around 4:30 a.m. on the morning of January 5, 1996, Radoncic and several others checked into a motel about 35 to 40 miles south of Lyndonville. Radoncic was driving a van, he stayed in the motel room for only an hour, and the phone in the room was used to make long distance calls to Krcic's home phone in Montreal and Markovic's relatives in New York City. Documents found on the two aliens also implicated Radoncic. These documents included airline tickets under false names to Montreal from Frankfurt which were charged to Radoncic's American Express card and which were used by Markovic and Kandic, after flying from Yugoslavia to Frankfurt.

The investigation stemming from the January 4, 1996, arrests also revealed a much broader smuggling organization involving Radoncic. Radoncic organized and participated in numerous other smugglings beginning in the early 1990s through which Yugoslavian aliens were smuggled into the United States from Canada.[2] Radoncic organized and participated in these smugglings, and people working in these schemes with Radoncic were paid handsomely, as was evidenced either by their testimony or the fact that they were generally apprehended with large amounts of cash on them. Krcic was not implicated in any of these incidents, save the two involving Bilodeau in December 1995 and January 1996.

Both Krcic and Radoncic were indicted and charged on two counts for the January 1996 smuggling.[3] They were tried before a jury, and both men claimed innocence at trial. Radoncic called witnesses who testified about his humanitarian concerns regarding former Yugoslavians in the context of the terrible conflict in Bosnia. Krcic introduced no such evidence. Bilodeau testified that Krcic solicited and paid him; no other witness so testified. The jury found both men guilty of both charges.

2. On July 29, 1996, while the January 1996 smuggling was being investigated, Radoncic was arrested in Champlain, New York, for arranging the pick-up of aliens who had crossed into New York from Canada. At the same time, Radoncic was under indictment in the Eastern District of Michigan for a 1993 arrest involving a smuggling incident.

3. Count One, under 18 U.S.C. § 371, charged conspiracy to smuggle aliens, and Count Two charged a substantive alien smuggling offense in violation of 8 U.S.C. § 1324.

At sentencing, the district court, in accord with the Presentence Report, established Krcic's base offense level to be 9, with a sentencing range of four to ten months.[4] Krcic argued that the district court should decrease his base offense level by three levels under Section 2L1.1(b)(1) of the U.S. Sentencing Guidelines Manual because there was no evidence that he smuggled for profit. Section 2L1.1(b)(1) provides that if a defendant smuggled other than for profit, the defendant's base offense level will be decreased by three levels.

Krcic argued that there was ample evidence from which the district court could conclude that Krcic was not motivated by profit, including the facts that there was a distant familial relationship between Krcic and the aliens smuggled on January 4, 1996, Radoncic's wife and Krcic's wife are distantly related,[5] and Krcic was of the same religious and ethnic background as the aliens. While Krcic's counsel stated at sentencing that Krcic was not paid, Krcic was not asked directly at sentencing if he had been paid, nor did he state voluntarily that he had not been paid. The government argued that it would be reasonable to infer that Krcic did commit the offense for profit, given the repeated trips and long distance calls between Montreal and the United States, the recruitment and payment by Krcic of others, the fact that Krcic did not have a job, and the fact that participants in Radoncic's other smuggling schemes were very well paid. The government conceded, however, that there was no direct evidence of money being paid to Krcic, and the fact that Krcic was paid was only established by the circumstances.

The district court refused to decrease Krcic's offense level under § 2L1.1(b)(1). The court concluded that

based upon the history of this entire pattern of criminal activity, my sense is that probably there was profit involved. . . .

In addition, if one looks at Mr. Krcic's activities, traveling across the border, waiting in the vicinity of McDonald's for persons to be brought back, making all the telephone calls, et cetera, [one] would have to likely conclude that there must have been some profit, it seems to me, involved in the activity.

As a result, the Court declines to make the reduction of three levels based upon this activity not being for profit. The Court specifically finds that in its discretion the Court believes that this was for profit.

Krcic was sentenced to four months' incarceration and a special assessment of $100.

*Discussion*

■■■ We review for clear error the district court's factual findings at sentencing with respect to whether a defendant smuggled aliens "for profit." *See United States v. Chavez–Palacios*, 30 F.3d 1290, 1295 (10th Cir.1994) (treating "for profit" determination under § 2L1.1 as a factual finding); *see also United States v. Trinidad–Lopez*, 979 F.2d 249, 251 (1st Cir. 1992) (same). In instances where there are two permissible views of the evidence, and the trial judge bases his finding on a decision "that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be" clearly erroneous. *Mar Oil, S.A., v. Morrissey*, 982 F.2d 830, 837 (2d Cir.1993) (internal citation and quotation omitted). "The mere fact that there may have been evidence that, if credited, would have supported a contrary inference does not mean that the inferences drawn by the court were clearly erroneous." *Id.* at 837–38. Even if we omit the word "mere" from this

---

4. Krcic's Presentence Report correctly applied the 1996 Sentencing Guidelines.

5. Krcic seems to argue that this supports both the point that he and Radoncic were affiliated for reasons other than smuggling, and the

point that, if there is a relationship between Radoncic's wife and Kandic and Markovic, then there is a familial relationship between Krcic and Kandic and Markovic.

quotation, the conclusion reached remains the same.

Krcic argues that the district court erred in failing to give determinative weight to his familial, ethnic, and religious identification with the persons smuggled in assessing whether Krcic's participation in the smuggling was for profit. We disagree.

There were two permissible views of the evidence, and we cannot say that the district court's factual conclusion that Krcic acted for profit was wrong. The sentencing judge had a more complete picture than we have: he sat through the trial, saw and heard each party and witness, and made credibility assessments based on every available consideration. If he then found the government's argument that Krcic must have been acting for profit to be the more believable argument, we are not in a position to overturn his resultant factual determinations unless we have a "definite and firm conviction that a mistake has been committed." *Id.* at 837. We have no such conviction. The district court's determination that Krcic participated in the smuggling of Hakija Kandic and Jahja Markovic for profit is not clearly erroneous.

The appellant and appellee discussed in their briefs and at oral argument, and the district court mentioned below, the question of whether the burden of proving facts to support or counter the for-profit motive rested on the government or Krcic. We do not need to decide that question to resolve this case.[6] Even if the burden were on the government to persuade the district court that Krcic committed the offense for profit, once the government proffered sufficient evidence, albeit circumstantial, to convince the district court that there was a for-profit motive, Krcic should have countered that evidence. Instead, Krcic proffered virtually nothing to bolster the argument that his familial, religious, or ethnic background compelled his actions.[7]

*Conclusion*

For the above-stated reasons, the district court is affirmed.

---

6. Though we need not rule upon, and are not ruling upon, the issue of whether the defendant has the burden at sentencing of establishing facts which would warrant the three-level decrease or its denial, we note that "[a]s a general matter, principles as to the allocation of [burdens] ... rest on goals and access." *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir.1992) (citing 9 J. Wigmore, Evidence §§ 2485–2486 (3d ed.1940)); *see United States v. Negron*, 967 F.2d 68, 72 (2d Cir. 1992) (citing same). If the goal is to decrease the base offense level, and if the information to which access is needed (the information being the defendant's motive) is more accessible to the defendant, it seems that the burden to establish that there was no for-profit motive should be on the defendant.

This position is in accord with our Circuit's general position that "[i]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." *Butler*, 970 F.2d at 1026. As well, placing on the defendant the burden of proving that a decrease in base offense level is merited is consistent with rulings from other Circuits. *See United States v.*

*Howard*, 894 F.2d 1085, 1089 (9th Cir.1990) (discussing the burden of proof rulings in the Third and Fourth Circuits; agreeing with these Circuits that "[u]nder the Guidelines, the party seeking to adjust the offense level should be required to persuade the court that such an adjustment is merited"); *see also United States v. Trinidad–Lopez*, 979 F.2d 249, 251 (1st Cir.1992) ("The validity of any claim of entitlement to a downward adjustment in the base offense level must be demonstrated by the defendant.").

7. While the appellant indicates that this case is like *United States v. Torres–Lopez*, 13 F.3d 1308 (9th Cir.1994), we disagree. In that case, the defendant was granted the 2L1.1(b)(1) deduction upon the recommendation of the probation officer because the defendant "denied that he was to receive any money for transporting the aliens, maintaining that he offered them a ride to San Diego strictly as a favor to fellow countrymen." *Id.* at 1310. We can discard an analogy to *Torres–Lopez* without further consideration because Krcic did not deny at sentencing receiving any money.