UNITED STATES of America, Appellee,

v.

Robert E. BRADLEY,
Defendant, Appellant.

No. 90–1578.

United States Court of Appeals,
First Circuit.

Heard Oct. 3, 1990.
Decided Oct. 24, 1990.

James St. Clair with whom Hale & Dorr, William C. Knowles, Susanne Folsom, and Verrill & Dana were on brief, for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Nicholas M. Gess, Asst. U.S. Atty., were on brief, for the U.S.

Before SELYA, Circuit Judge,
BOWNES, Senior Circuit Judge, and
ATKINS *, Senior District Judge.

SELYA, Circuit Judge.

Defendant-appellant Robert E. Bradley questions the district court's application of the sentencing guidelines. Notwithstanding the elegance with which Bradley's arguments are advanced by able counsel, we find the appeal lacking in substance.

### How The Sentence Eventuated

In October 1989, Bradley attracted the attention of an intergovernmental drug enforcement task force. Undercover agents managed to gain his confidence and purchased 3.4 grams of cocaine from him. Five days later, the agents initiated negotiations to acquire a kilogram. While these negotiations were ongoing, they made several smaller purchases from Bradley. Although Bradley agreed to sell the kilogram, he was arrested before it was produced.

A federal grand jury returned a six count indictment charging that, on five separate dates between October 27, 1989 and

* Of the Southern District of Florida, sitting by designation.

November 28, 1989, appellant distributed cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). The sixth count charged appellant with carrying a firearm during and in relation to the commission of drug trafficking crimes, thereby violating 18 U.S.C. § 924(c)(1) (1988). Appellant entered guilty pleas to all counts.

In due course, the presentence investigation report was prepared. The probation officer considered defendant's objections to the report and issued an addendum. The district court held a sentencing hearing to resolve the remaining objections, made a series of findings, and proceeded to calculate the guideline sentencing range (GSR). *See generally United States v. Diaz–Villafane,* 874 F.2d 43, 47–48 (1st Cir.) (explaining method of computation under federal sentencing guidelines), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Wright,* 873 F.2d 437, 440 (1st Cir.1989) (similar). Although we will trace certain details of that computation in greater detail *infra,* it is enough for introductory purposes to note that the court grouped counts 1–5 pursuant to U.S.S.G. § 3D1.2(d);[1] set the base offense level at 26 on the theory that defendant's overall conduct involved 1.814 kilograms of cocaine, *see* U.S.S.G. § 2D1.1(c)(9) (Drug Quantity Table) (establishing base offense level at 26 where includable conduct implicates "500 G but less than 2 KG of cocaine"); and determined the GSR for counts 1 through 5, combined, to be 70–87 months, *see* U.S.S.G. Ch. 5, Pt. A (Sentencing Table) (offense level 26; criminal history category II).

The court imposed a sentence within, but at the very zenith of, the GSR: 87 months in prison, plus a term of supervised release.[2] This appeal followed.

### The Issues

Although appellant offers many arguments in his brief on appeal, the array boils down to two principal remonstrances. First, he contends that the court below erred in attributing amounts of cocaine to him, thus exaggerating his base offense level. Second, he urges us to find that the court impermissibly withheld a two level reduction for acceptance of responsibility. We will examine these contentions in sequence.

Before reaching the first issue, however, we believe that we should narrow it. The district court's computation of the GSR rested upon its finding that Bradley's relevant criminal conduct involved at least 500 grams of cocaine. *See* U.S.S.G. § 2D1.1(c)(9) (Drug Quantity Table). It is undisputed that the five consummated transactions in which Bradley gave or sold contraband to the undercover agents involved 102.1 grams of cocaine. The section 2D1.1(c)(9) threshold was crossed when the court counted (1) the evanescent kilogram of cocaine which Bradley agreed to sell to the agents but never delivered, and (2) 714 grams of cocaine which the court found, from Bradley's own testimony at the sentencing hearing, had previously been sold by him to others as "part of the same course of conduct or common scheme or plan as the offense of conviction," although not charged in the indictment. *See* U.S.S.G. § 1B1.3(a)(2).

Appellant's counsel forthrightly conceded at oral argument that the 102.1 grams was properly counted and that he could prevail on appeal only by persuading us that both the kilogram and the 714 grams were wrongly included in the calculation. Inasmuch as Level 26 is triggered by any quantity of 500 grams or more, *see* U.S.S.G. § 2D1.1(c)(9) (Drug Quantity Table), either of the other amounts, when added to the admitted 102.1 grams, would pull the trigger. Hence, the base offense level was correctly calculated so long as one or the other of the add-ons was appropriately included.

---

**1.** This grouping of multiple counts was advantageous to Bradley and he does not question it on appeal.

**2.** As required by law, 18 U.S.C. § 924(c)(1), defendant received a separate 5–year jail sentence on count 6 (the weapons charge), running consecutive to the 87–month sentence. On appeal, Bradley does not contest the separate 5–year sentence.

In light of this concession, our task is effectively halved. Since we find that the lower court's inclusion of the negotiated kilogram was irreproachable, *see infra*, we can safely eschew consideration of whether defendant's antecedent drug dealings totalled 714 grams or involved the same course of conduct as the counts of conviction. After all, when correction of a finding would not change the applicable offense level or affect the sentencing range, any error therein would necessarily be harmless. *Accord United States v. Sciarrino*, 884 F.2d 95, 98 (3d Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989).

### The Missing Kilogram

In this type of case, a key datum in constructing defendant's sentence is the quantity of narcotics attributable to him for sentencing purposes, a datum bounded initially by the sum of the charged conduct to which the defendant pleads plus his "relevant" uncharged conduct. *See* U.S.S.G. § 1B1.3(a)(2). Put another way, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or ... common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3(a)(2) comment. (backg'd). We painstakingly explained the operation of this principle in *United States v. Blanco*, 888 F.2d 907, 908–11 (1st Cir.1989), and will not rehearse that discussion here. Suffice to say that every court to consider the issue, including this one, has concluded that an amount of drugs which a defendant negotiates to sell may be considered as relevant conduct for base offense level purposes even if the drugs are never produced. *See, e.g., United States v. Alston*, 895 F.2d 1362, 1371–72 (11th Cir.1990); *United States v. Garcia*, 889 F.2d 1454, 1456 (5th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *Blanco*, 888 F.2d at 909; *United States v. Perez*, 871 F.2d 45, 48 (6th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989); *see also United States v. Valle-Sanchez*, 912 F.2d 424, 426 (10th Cir.1990) (guidelines "permit inclusion of amounts which a defendant agrees to sell but ... does not deliver") (dicta).

One pillar upon which these rulings rest has been sculpted by the Sentencing Commission, which wrote:

If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation that amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

U.S.S.G. § 2D1.4, comment. (note 1). This line of reasoning has consistently been applied not just to persons convicted of conspiracy or attempt, but to persons found guilty of substantive narcotics offenses. *See, e.g., Garcia*, 889 F.2d at 1456–57; *United States v. White*, 888 F.2d 490, 497 (7th Cir.1989); *Blanco*, 888 F.2d at 908–09. Thus, our inquiry reduces to the supportability of the district court's finding that Bradley fully intended to produce, and was reasonably capable of producing, the missing kilogram.

To be sure, the answer is not entirely one-sided. There are points in defendant's favor: the kilogram never surfaced; there is no evidence that Bradley previously handled single transactions of such a large size; some of the negotiations may have taken place in an atmosphere permeated by drugs and alcohol; and defendant testified that the kilogram was a figment of his imagination and the promise to deliver it born of bravado and braggadocio. Yet the points in the other direction seem at least as convincing. The agents testified: that approximately two weeks after their initial introduction, Bradley told them he would—and could—sell "any amount [of cocaine] at any time ... provided you pass my security check;" that when they broached the subject of buying a kilogram, Bradley immediately quoted a price and an availability

date; that Bradley thereafter negotiated in earnest, upping the price tag from $28,000 to $32,000 in the course of the cotillion; that Bradley threatened to shoot one of the agents between the eyes if he notified the police when the kilogram was delivered (and, brandishing a semiautomatic machine pistol, graphically demonstrated how he would carry out the threat); and that Bradley groused about the heightened risks of selling a kilogram as opposed to peddling fractional ounces.

Moreover, when the agents first met Bradley at a party, they overheard him tell two friends that the cocaine being provided for the gathering had cost $28,000 per kilogram—the exact figure which he subsequently quoted to the agents. Perhaps most damning of all, when Bradley jacked up the price of the kilogram in midstream, he gave the agents a slip of paper written in his own hand, which read: "The price on the key is $32,000 it's here—that's a yes or no with zero discussion." When the agents inquired what "it's here" meant, appellant responded that he could deliver the contraband within the hour.

■ We think that we have gone far enough to give the reader a flavor of what transpired between prospective seller and prospective buyer. The government had the burden of demonstrating by a fair preponderance that uncharged amounts of drugs used in selecting the base offense level were properly included. In weighing the facts the sentencing court could evaluate virtually any dependable information, *see* U.S.S.G. § 6A1.3 (sentencing court may consider all pertinent information which has "sufficient indicia of reliability to support its probable accuracy"), including the agents' recollections. As to the missing kilogram, the prosecution's burden was carried handsomely.

■ The district court made specific findings, articulating its reasons for believing that Bradley both intended, and had the capacity, to deliver the kilogram. The court considered Bradley's account of the transaction and explicitly rejected it, finding implausible that Bradley would have played so dangerous a game other than with serious purpose. Such credibility determinations and interpretations of the true meaning of subsidiary facts are uniquely within the province of the sentencing judge. *See, e.g., United States v. Jimenez–Otero,* 898 F.2d 813, 814–15 (1st Cir. 1990). And the collocation of attendant circumstances neatly accommodates the court's rationale.

■ On appeal, the sentencing court's finding that drugs other than those specified in the indictment existed and formed part of the same course of conduct is entitled to considerable deference. *See Diaz–Villafane,* 874 F.2d at 48; *Wright,* 873 F.2d at 443–44; *see also* 18 U.S.C. § 3742(e) (1985 & Supp.1990). Absent mistake of law—and there has been none here—we review such conclusions only for clear error.[3] *United States v. Mocciola,* 891 F.2d 13, 16 (1st Cir.1989). We will not disturb supported findings unless our scrutiny of the record convinces us that a grave mistake was made. We cannot find such a mistake appertaining to computation of Bradley's base offense level. As we have

---

3. We acknowledge, but see no point in longiloquently addressing, appellant's claim that the "uncharged conduct" provisions of the sentencing guidelines, and in particular U.S.S.G. § 1B1.3, violate the Due Process Clause as applied to him because, *inter alia,* the negotiated kilogram was never actually sold and he was never charged with the attempt. Citing *United States v. Restrepo,* 883 F.2d 781 (9th Cir.1989), Bradley argues that to sentence him as if the single kilogram sale had actually been completed was fundamentally unfair. Appellant's Brief at 33–34. The short answer to appellant's plaint is that *Restrepo* was withdrawn, then reversed, by the Ninth Circuit. *See United States v. Restrepo,* 903 F.2d 648 (9th Cir.1990). The slightly

longer, but equally definitive, answer is that section 1B1.3 has been routinely upheld in the face of similar due process challenges. *See, e.g., United States v. Castellanos,* 904 F.2d 1490, 1492–96 (11th Cir.1990) (on petition for rehearing); *United States v. Beaulieu,* 900 F.2d 1537, 1540 (10th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990); *United States v. Strong,* 891 F.2d 82, 85 (5th Cir.1989); *United States v. Fox,* 889 F.2d 357, 363 (1st Cir.1989); *Blanco,* 888 F.2d at 909–10; *United States v. Barnerd,* 887 F.2d 841, 842 (8th Cir. 1989). Though artfully fashioned, appellant's claim is, like Talleyrand seen through Napoleon's eyes, figuratively equivalent to a silk stocking filled with mud.

heretofore written, "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." *United States v. Ruiz*, 905 F.2d 499, 508 (1st Cir.1990); *accord Jimenez–Otero*, 898 F.2d at 815 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)).

### Acceptance of Responsibility

■■■■■ Appellant also contends that the court below miscalculated the GSR because it failed to shrink his offense level to reflect acceptance of responsibility.[4] Of course, the defendant must carry the burden of proving his entitlement to a downward adjustment in the offense level. *United States v. Ocasio*, 914 F.2d 330, 337–38 (1st Cir.1990); *United States v. Urrego–Linares*, 879 F.2d 1234, 1238–40 (4th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). Moreover, "[b]ecause the sentencing judge has the unique opportunity of observing the defendant, hearing his allocution, and evaluating acceptance of responsibility in a live context against the backdrop of the case as a whole, his determination is entitled to great respect." *United States v. Royer*, 895 F.2d 28, 29 (1st Cir.1990); *see generally* 18 U.S.C. § 3742(e) (1985 & Supp.1990). Thus, the district court's decision to withhold such a reduction will be reversed only for clear error. *Royer*, 895 F.2d at 29; *United States v. Mata–Grullon*, 887 F.2d 23, 24 (1st Cir.1989) (per curiam).

■■■■ In this instance, we have no occasion to linger. While Bradley pled guilty to the charges, that did not entitle him to a sentencing discount as a matter of right. *See United States v. Scott*, 915 F.2d 774, 776 (1st Cir.1990); *Royer*, 895 F.2d at 29–30. Rather, "[t]he inquiry into acceptance of responsibility is necessarily factbound" and "[c]redibility and demeanor play a crucial role in determining whether a person is genuinely contrite." *Royer*, 895 F.2d at 30.

Bradley's guilty plea was, therefore, but one integer in an elaborate calculus.

■■■ Here, the record belies appellant's assertion that the trial court lacked a sufficient foundation to withhold the discretionary two level reduction. The court made a specific finding, amply supported by the facts and by plausible inferences therefrom, that appellant, to the bitter end, was "engaged ... in the process of minimizing his responsibility and culpability." The court found that Bradley lied at the sentencing hearing about his intent and capacity to deliver the kilogram of cocaine, *see supra* pp. 604–606, about many of his statements to the agents, and about his use of firearms. In fine, the district court had a surfeit of valid reasons for denying the credit in this case. Acceptance of responsibility, in the final analysis, "necessitates candor and authentic remorse—not merely a pat recital of the vocabulary of contrition." *Royer*, 895 F.2d at 30.

### Conclusion

We need go no further. Inasmuch as the GSR was based upon findings that cannot in good conscience be characterized as clearly erroneous, and the sentence appealed from was within, albeit at the high end of, the applicable guideline range, the judgment of conviction and defendant's sentence must be

*Affirmed.*

■■■■■

---

4. Section 3E1.1 of the sentencing guidelines provides for a two level decrease "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct."