UNITED STATES of America, Appellee,

v.

Edgar GRACIANI, Defendant, Appellant.

No. 94–1879.

United States Court of Appeals,
First Circuit.

Submitted June 8, 1995.

Decided July 24, 1995.

ing the decisions they make, knowing the difference between what's wrong and what's right, what's illegal and legal.

Harry R. Segarra, by appointment of the court, Ponce, PR, Benicio Sanchez Rivera, Federal Public Defender, and Miguel A.A. Nogueras–Castro, Asst. Federal Public Defender, Old San Juan, PR, on various briefs, for appellant.

Guillermo Gil, U.S. Atty., Washington, DC, Jorge E. Vega–Pacheco and Edwin O. Vazquez, Asst. U.S. Attys., Hato Rey, PR, on brief, for U.S.

Before SELYA, BOUDIN and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Edgar Graciani challenges the sentence imposed below on several grounds. He also belatedly moves to remand on the basis of newly discovered evidence—an initiative that requires us to set out for the first time the procedural framework that pertains to a motion brought under Fed.R.Crim.P. 33 while a criminal case is pending on direct appeal, and, relatedly, to examine the interplay between Rule 33 and a defendant's guilty plea. In the end, we affirm the sentence and deny the motion.

## I.

### Background

Because appellant's conviction and sentence stem from a guilty plea rather than a verdict, we derive the pertinent facts from the presentence investigation report (PSI Report), the government's statement served pursuant to D.P.R.Loc.R. 418.2(a),[1] and the transcripts of the change-of-plea and disposition hearings. *See United States v. Tejada–Beltran*, 50 F.3d 105, 107 (1st Cir.1995); *United States v. Dietz*, 950 F.2d 50, 51 (1st Cir.1991).

On or about January 14, 1992, appellant arranged to sell one-eighth of a kilogram of crack cocaine (125 grams) to a customer who was, in reality, a government operative. On the evening of January 15, appellant's couri-

---

1. The local rule provides:

 In all cases where a Presentence Investigation Report is ordered ... counsel for the government shall file with the Court and serve upon the defendant's counsel, a statement setting forth the government's version of the facts leading to the acceptance of criminal responsibility.

 D.P.R.Loc.R. 418.2(a). In this case, the defendant did not object to the statement submitted by the government.

er, Carlos Delgado Rojas (Delgado), told the agent that appellant could not supply the full 125 grams of crack then and there; instead, he proposed to deliver approximately 80 grams of crack and 45–50 grams of powdered cocaine. Once the agent agreed to the substitution, the parties consummated the transaction. Subsequent measurement revealed that Delgado had delivered 85.3 grams of crack and 54.4 grams of cocaine powder.

The agent expressed an interest in future purchases. Appellant agreed to sell him a half-kilogram of crack, to be delivered on January 24. At the appointed time, Delgado, armed, appeared at the delivery site accompanied by Juan Encarnacion Castro (Encarnacion) and a juvenile (G.R.M.). The men were apprehended and the arresting officers seized a loaded pistol. The officers also seized three plastic bags containing a white, powdery substance later determined to be sugar.[2] Further investigation revealed that appellant gave the seized firearm to Delgado for protection during the drug transaction.

The grand jury indicted Graciani, Delgado, and Encarnacion on a medley of charges. Appellant was named in seven counts of the superseding indictment. He eventually agreed to plead guilty to count 1 (which charged the unlawful distribution of 85.3 grams of crack cocaine on January 15 in violation of 21 U.S.C. § 841(a)(1)) and count 7 (which charged the unlawful carriage of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)). The plea agreement left the sentence in the court's discretion (subject, of course, to the constraints imposed by the sentencing guidelines).

The district court took appellant's plea and commissioned a PSI Report. The court originally sentenced appellant on July 7, 1992,[3] but then reconsidered. We do not concern ourselves with the withdrawn sentence, but focus upon the second disposition hearing (held on August 2, 1994). The court attributed to appellant (a) the weight of the crack cocaine actually supplied on January 15, (b) the weight of the powdered cocaine actually supplied on that date, and (c) the weight of the crack cocaine promised for delivery on January 24. Then, using the Drug Quantity Table, the court set appellant's base offense level (BOL) at 36. *See* U.S.S.G. § 2D1.1(c)(4) (Drug Quantity Table) (specifying a BOL of 36 for offenses involving "[a]t least 500 G but less than 1.5 KG of Cocaine Base").

The court added six levels—four for appellant's aggravating role in the offense, *see id.* § 3B1.1(a), and two for obstruction of justice, *see id.* § 3C1.1—and subtracted three levels for acceptance of responsibility, *see id.* § 3E1.1, bringing the total offense level (TOL) to 39. Given appellant's status as a first offender, these computations yielded a guideline sentencing range (GSR) of 262–327 months. The court imposed a 280–month incarcerative sentence on count 1, and added a 60–month consecutive sentence on count 7 to accommodate a mandatory minimum. *See* 18 U.S.C. § 924(c)(1). This appeal ensued.

## II.

### Discussion

Appellant advances a myriad of arguments in support of the appeal and the concomitant motion. We deal with these arguments *seriatim.*

### A.

### Relevant Conduct

■ The method of the sentencing guidelines makes the quantity of narcotics attributable to a convicted drug trafficker a key

---

**2.** Appellant eventually admitted that he had agreed to purvey the half-kilogram of crack, and stated that he had prepared for the transaction by "cooking" that amount of cocaine. He then substituted sugar for crack, claiming that he had a premonition that he might be apprehended. The circumstances suggest that something more sinister might have been afoot. *Cf. United States v. Dray,* 901 F.2d 1132, 1134 (1st Cir.) ("Honor, even among thieves, may all too often be, in the

bard's phrase, 'a mere scutcheon.'") (quoting William Shakespeare, *Henry IV Part I,* act V, sc. 1 (1598)), *cert. denied,* 498 U.S. 895, 111 S.Ct. 245, 112 L.Ed.2d 204 (1990).

**3.** The court dismissed the remaining five counts at that time as per the plea agreement. The ensuing reconsideration of the sentence did not implicate the dismissed counts.

datum in constructing his sentence. *See United States v. Sepulveda*, 15 F.3d 1161, 1196 (1st Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1995); *United States v. Garcia*, 954 F.2d 12, 15 (1st Cir.1992); *United States v. Bradley*, 917 F.2d 601, 604 (1st Cir.1990). In this case, appellant castigates the district court for attributing to him a drug quantity in excess of the amount of crack cocaine involved in the count of conviction. Appellant's fusillade lands well wide of the target.

 Under the guidelines, the aggregate amount of attributed drugs is to be derived from the sum total of all relevant conduct. The proper figure can only be computed, therefore, by careful consideration of all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). "Relevant conduct is not limited to the counts of conviction"; rather, it includes both the charged conduct to which a defendant pleads and also any other conduct that qualifies under the relevancy rubric. *Tejada–Beltran*, 50 F.3d at 110; *see also Garcia*, 954 F.2d at 15; *Bradley*, 917 F.2d at 605; U.S.S.G. § 1B1.3, comment. (backg'd). Specifically—and in direct contradiction to the position asserted by appellant—relevant conduct may include both uncharged conduct and conduct underbracing counts that have been charged and then dropped. *See Tejada–Beltran*, 50 F.3d at 110; *Garcia*, 954 F.2d at 15.

That ends the matter. In the usual case, we review a sentencing court's drug quantity determination only for clear error. *See Se-*

pulveda, 15 F.3d at 1196; *Bradley*, 917 F.2d at 605. Here, the district court supportably found that the delivery of the crack and powdered cocaine on January 15, and the agreement to sell additional crack cocaine on January 24, were all part of the same course of criminal activity, and, thus, relevant conduct. We see no error.

By like token, the fact that the government seized sugar, and never recovered the half-kilogram of crack that appellant promised to supply on January 24, does not sweeten the bottom line by precluding reference to the agreed quantity in the sentencing determination. Indeed, "every court to consider the issue, including this one, has concluded that an amount of drugs which a defendant negotiates to sell may be considered as relevant conduct for base offense level purposes even if the drugs are never produced." *Bradley*, 917 F.2d at 604.[4]

For these reasons, we conclude that the lower court's drug quantity calculation cannot be faulted.

### B.

### *Drug Equivalency*

Appellant's next protestation, now familiar in all the circuits, criticizes the fact that the guidelines, and specifically U.S.S.G. § 2D1.1, equate one kilogram of crack cocaine to one hundred kilograms of powdered cocaine for sentencing purposes.[5] We have squarely rejected claims that the conversion formula has a greater impact on African–Americans, and, thus, transgresses the Equal Protection

---

**4.** To be sure, there are exceptions to this rule, *see, e.g.*, U.S.S.G. § 2D1.1, comment. (n. 12) (requiring exclusion of negotiated amount if "the court finds that the defendant did not intend to produce and was not reasonably capable of producing [it]"); *United States v. Muniz*, 49 F.3d 36, 41–42 (1st Cir.1995) (discussing application of note 12); *United States v. Gessa*, 971 F.2d 1257, 1265 (6th Cir.1991) (remanding for findings with respect to defendant's intent and capability), but appellant has not brought his situation within the confines of any recognized exception.

**5.** The Sentencing Commission recently submitted proposed guideline amendments that would substantially reduce the equivalency ratio between crack cocaine and powdered cocaine. *See* 60 Fed.Reg. 25,074, 25,075–76 (1995). The pro-

posed changes will become effective on November 1, 1995, absent congressional action to the contrary. *See* 28 U.S.C. § 994(p) (1988). The Commission has not yet decided whether the changes, if they become law, should apply retrospectively. *See* 60 Fed.Reg. at 25,074. If the amendments are eventually determined to warrant retroactive application, appellant may then be in a position to seek appropriate relief in the district court. *See United States v. Saccoccia*, 58 F.3d 754, 786 n. 27 (1st Cir.1995); *United States v. Connell*, 960 F.2d 191, 197 n. 10 (1st Cir. 1992). We express no opinion on the subject, but merely note the possibility and proceed without further reference to what the future may bring.

Clause of the Fifth Amendment. *See United States v. Singleterry*, 29 F.3d 733 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 647, 130 L.Ed.2d 552 (1994). There, we held the sentencing distinction between crack and powdered cocaine to be constitutional, finding no significantly probative evidence that either Congress or the Sentencing Commission harbored a racial animus or discriminatory intent. *Id.* at 741. We also found a sufficient rational basis for the conversion formula and the resultant sentencing scheme. *See id.* at 740.

[4] It is axiomatic that, "[i]n a multipanel circuit, newly constituted panels are, for the most part, bound by prior panel decisions closely on point." *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 592 (1st Cir. 1995), *petition for cert. filed*, 63 U.S.L.W. 3819 (U.S. May 2, 1995) (No. 94–1804–CFX). This principle applies in criminal as well as civil cases. *See, e.g., United States v. Wogan*, 938 F.2d 1446, 1449 (1st Cir.), *cert. denied*, 502 U.S. 969, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991); *see also Lacy v. Gardino*, 791 F.2d 980, 985 (1st Cir.) (applying principle in habeas corpus context), *cert. denied*, 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986). Because *Singleterry* is controlling on this issue, we dismiss appellant's claim.[6]

### C.

#### Other Adjustments

Appellant complains of two upward adjustments to his BOL, one for role in the offense and one for obstruction of justice. Neither of these complaints need occupy us for long.

1. *Role in the Offense.* U.S.S.G. § 3B1.1(a) provides for elevating a defendant's BOL by four levels if the district court makes both a status determination (that the defendant was "an organizer or leader of a

criminal activity") and a scope determination ("that the defendant's criminal activity involved five or more participants or was otherwise extensive"). We have explicated this proviso in a series of opinions, *see, e.g., United States v. Rostoff*, 53 F.3d 398, 413–14 (1st Cir.1995); *Tejada–Beltran*, 50 F.3d at 110–12; *United States v. McDowell*, 918 F.2d 1004, 1011–12 (1st Cir.1990), and it would be pleonastic to rehearse that jurisprudence here. Two comments should suffice.

■ First, the determination of a defendant's role in an offense is necessarily fact-specific. Appellate courts review such determinations only for clear error. *See Garcia*, 954 F.2d at 18; *Dietz*, 950 F.2d at 52. Thus, absent a mistake of law, battles over a defendant's status and over the scope of the criminal enterprise will almost always be won or lost in the district court. *See McDowell*, 918 F.2d at 1011 (urging "that considerable respect be paid to the views of the nisi prius court" in connection with such findings) (quoting *United States v. Ocasio*, 914 F.2d 330, 333 (1st Cir.1990)). In this case, we see no hint of clear error in the trial court's determination that appellant was the leader of an enterprise of the requisite size.

■ Appellant strives to avoid clear-error review by isolating a supposed mistake of law. He says that the court erred in making its scope determination; there could not have been "five or more participants" because only convicted individuals can be counted, and, here, the government indicted no more than three persons (Graciani, Delgado, and Encarnacion). The argument cannot withstand the mildest scrutiny. The law is pellucid that a scope determination under section 3B1.1(a) turns not on the number of people convicted, but on the number of persons involved in the criminal activity, whether or not indicted (let

---

**6.** In any event, every other circuit that has grappled with this claim has rejected the arguments necessary to find § 2D1.1 in violation of the constitutional guarantee of equal protection. *See, e.g., United States v. Moore*, 54 F.3d 92, 95–96 (2d Cir.1995); *United States v. Cherry*, 50 F.3d 338, 342–44 (5th Cir.1995); *United States v. Williams*, 45 F.3d 1481, 1485–86 (10th Cir.1995); *United States v. Butler*, 41 F.3d 1435, 1442 (11th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 1987,

131 L.Ed.2d 874 (1995); *United States v. Johnson*, 40 F.3d 436, 439–41 (D.C.Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1412, 131 L.Ed.2d 297 (1995); *United States v. McMurray*, 34 F.3d 1405, 1413 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1164, 130 L.Ed.2d 1119 (1995); *United States v. Frazier*, 981 F.2d 92, 95 (3d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1661, 123 L.Ed.2d 279 (1993).

alone convicted). *See Dietz,* 950 F.2d at 53. That is, the defendant's BOL may be elevated under section 3B1.1(a) "as long as the record permits the sentencing court to make 'a specific finding, based on a preponderance of the evidence, which pinpoints [the participants] with enough particularity to give credence to the upward adjustment.'" *Tejada–Beltran,* 50 F.3d at 113 (quoting *McDowell,* 918 F.2d at 1011).

■ The record before us clears this hurdle with room to spare. In addition to Delgado, Encarnacion, G.R.M., and appellant himself, the PSI Report states without contradiction that appellant was the leader and organizer of a band, mostly comprised of juveniles, that was involved, *inter alia,* in drug trafficking activities. The numerosity requirement was, therefore, satisfied.[7] *See, e.g., United States v. Diaz–Villafane,* 874 F.2d 43, 48 (1st Cir.) (approving similar role-in-the-offense adjustment despite lack of express identification of all co-participants), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

■ **2. Obstruction of Justice.** The district court increased appellant's BOL by two levels under U.S.S.G. § 3C1.1. The court predicated the enhancement on a finding that appellant threatened both a confidential informant and a cooperating codefendant in an effort to influence their testimony against him. Appellant now challenges the adjustment on the basis that he was not charged with obstruction of justice and did not admit to committing the underlying conduct.

This challenge is too little, too late. Appellant never advanced this objection in the court below. It is black letter law that, "in connection with sentencing as in other contexts, ... arguments not seasonably addressed to the trial court may not be raised for the first time in an appellate venue." *Dietz,* 950 F.2d at 55; *accord United States v. Piper,* 35 F.3d 611, 620 n. 6 (1st Cir.1994),

*cert. denied,* —— U.S. ——, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995); *Sepulveda,* 15 F.3d at 1202. Consequently, appellant's challenge is foreclosed.

### D.

### *The Eighth Amendment*

■ Appellant contends that a 280–month sentence for the distribution of so paltry an amount of crack cocaine constitutes cruel and unusual punishment in derogation of the Eighth Amendment. We do not agree.

■ The Eighth Amendment does not require a precise calibration of crime and punishment in noncapital cases. *See United States v. Saccoccia,* 58 F.3d 754, 788 (1st Cir.1995). At most, the Eighth Amendment gives rise to a "narrow proportionality principle," *Harmelin v. Michigan,* 501 U.S. 957, 997, 111 S.Ct. 2680, 2702, 115 L.Ed.2d 836 (1991) (opinion of Kennedy, J.), forbidding only extreme sentences that are significantly disproportionate to the underlying crime. *See id.* at 1001, 111 S.Ct. at 2705; *see also Solem v. Helm,* 463 U.S. 277, 288, 103 S.Ct. 3001, 3008, 77 L.Ed.2d 637 (1983); *Saccoccia,* 58 F.3d at 788; *United States v. Munoz,* 36 F.3d 1229, 1239 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1164, 130 L.Ed.2d 1120 (1995).

It is, therefore, unsurprising that, with a regularity bordering on the echolalic, courts have repulsed Eighth Amendment challenges to lengthy incarcerative sentences in drug cases. For example, in *Hutto v. Davis,* 454 U.S. 370, 374, 102 S.Ct. 703, 705–06, 70 L.Ed.2d 556 (1982), the Supreme Court upheld a 40–year prison sentence for possessing nine ounces of marijuana with distributive intent. More recently, a clear majority of the Justices in *Harmelin,* while differing on the constitutional status of proportionality

---

**7.** To trigger § 3B1.1(a), a scope determination must yield a supportable finding that the criminal activity meets either the numerosity requirement *or* the guideline's extensiveness requirement. *See Rostoff,* 53 F.3d at 413; *Tejada–Beltran,* 50 F.3d at 110. Here, the record shows not only numerosity but also extensiveness. DEA agents seized a ledger that established a wide-

ranging pattern of drug trafficking activities, and a trash bag containing thousands of empty vials used to package crack cocaine. On this basis, the extensiveness requirement is satisfied. *See, e.g., Dietz,* 950 F.2d at 53 (emphasizing importance of "width, breadth, scope, complexity and duration of the scheme" in connection with an extensiveness determination).

review, found insufficient disproportionality to forestall a mandatory sentence of life without parole for possession of over 650 grams of cocaine. Recent opinions of the courts of appeals are to like effect. *See, e.g., Munoz*, 36 F.3d at 1239 (holding that a 240–month sentence meted out for participation in a crack-selling conspiracy involving less than 900 grams of cocaine base accorded with the *Harmelin* standard); *United States v. Wesley*, 990 F.2d 360, 367 (8th Cir.1993) (holding that 100–to–1 sentencing ratio between cocaine and crack cocaine does not violate the Eighth Amendment). With these cases as a reference point, appellant's sentence cannot successfully be attacked on Eighth Amendment grounds.

## E.

### The Motion To Remand

Following the submission of the parties' appellate briefs, appellant's new counsel filed a motion in this court asking us to withhold decision and remand the case to the district court for a hearing on "newly discovered evidence" and for a new trial.[8] The motion was accompanied by an affidavit of G.R.M. (now identified as German R. Maldonado) that purports to absolve appellant of responsibility for the offenses of conviction. The motion asserts that this "newly discovered evidence" warrants the relief requested. We think not.

In the first place, appellant puts the cart before the horse. Concededly, a motion for a new trial based on newly discovered evidence can be brought while a criminal case is pending on direct appeal. *See* Fed.R.Crim.P. 33.[9] The question remains, however, whether the court of appeals is the appropriate forum in which a criminal defendant may initiate review of a Rule 33 motion by the district

court, and, relatedly, whether a remand is necessary before the district court can entertain a Rule 33 motion. In general, both parts of this inquiry evoke a negative response.

A criminal defendant who aspires to employ Rule 33 while his conviction is pending on direct appeal is not obliged either to file a motion for remand in the court of appeals or to seek any type of leave from that court. To the contrary, the proper procedure under such circumstances is for the defendant, without further ado, to file his Rule 33 motion in the district court. *See United States v. Phillips*, 558 F.2d 363, 363 (6th Cir.1977) (per curiam). Once the motion has been so docketed, the district court has jurisdiction to entertain it notwithstanding the pendency of the appeal, and may either deny it on the merits or indicate an intention to grant it. *See United States v. Fuentes–Lozano*, 580 F.2d 724, 725–26 (5th Cir.1978) (per curiam); *United States v. Frame*, 454 F.2d 1136, 1138 (9th Cir.) (per curiam), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1794, 32 L.Ed.2d 126 (1972); *see also United States v. Cronic*, 466 U.S. 648, 666 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984) (noting correct procedural progression). If the district court denies the motion, the defendant may take a further appeal; and if the court proposes to grant the motion, it ordinarily will issue a written statement to that effect so that the defendant, armed with the advisory, may then request an order of remand from the appellate court. *See Frame*, 454 F.2d at 1138.

We adopt this protocol, requiring a Rule 33 motion to be filed initially in the district court when a direct appeal of a criminal conviction is pending, for four main rea-

---

8. In point of fact, counsel filed two motions, both of which rely on the same affidavit. To the extent that the second motion can be read as requesting different relief—a hearing as to whether the plea agreement is null and void (and, presumably, whether the appellant should be permitted to withdraw his plea)—we deny it without prejudice to the filing of a proper petition under 28 U.S.C. § 2255 (1988). The plea-withdrawal argument was not raised below and, in the absence of essential factfinding, we decline to entertain it on direct appeal.

9. The rule states in pertinent part:

> A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case.

Fed.R.Crim.P. 33.

sons. First, the protocol accords with the weight of authority. *See, e.g., Phillips, supra; Frame, supra.* Second, it comports with the discernible intention of the drafters of the 1944 amendments to Rule 33. *See, e.g., Frame,* 454 F.2d at 1138 (discussing 1944 amendments). Third, it coheres with our established procedural paradigm for handling parallel situations on the civil side. *See Toscano v. Chandris,* 934 F.2d 383, 386 (1st Cir.1991) (explaining that "if an appeal is pending, a Rule 60(b) motion should first be filed in the trial court, and the district judge, if inclined to allow it, may then request remand"); *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 601 F.2d 39, 42 (1st Cir.1979) (ordaining comparable procedure when, during the pendency of an appeal from a final judgment, a party claims to have discovered an exogenous basis for relief from the judgment).

Last but not least, principles of sound judicial administration counsel that the district court should be allowed to exercise its discretion to the fullest extent permissible under Rule 33 before the court of appeals becomes enmeshed. *See Frame,* 454 F.2d at 1138. The protocol we adopt today meets this objective. It takes advantage of the district court's greater familiarity with the case; it husbands judicial resources, thus eliminating the need for a time-consuming remand in those situations in which the trial court discerns no basis for granting a new trial; and, finally, it ensures that the merits of the motion for new trial will be heard rapidly, while at the same time keeping the earlier appeal on track.[10]

Since appellant did not follow this protocol in moving to remand, his motion must in all events be denied for procedural reasons. But, there is an added wrinkle. If the problem were purely procedural, we would simply deny the motion to remand without prejudice to appellant's pursuit of redress under Rule 33 in the district court. *See United States v. Boberg,* 565 F.2d 1059, 1063 (8th Cir.1977) (affirming conviction in analogous circum-

stances "without prejudice to any motion to the district court for a new trial on the grounds of newly discovered evidence"). Here, however, the vice is more profound; the motion is also substantively infirm. We explain briefly.

By its express terms, Rule 33 is confined to those situations in which a trial has been had. In the court below, appellant *admitted* his guilt, abjuring a trial. A defendant who enters a guilty plea cannot thereafter use Rule 33 as a wedge to undo his acknowledgement that he committed the offense. *See United States v. Collins,* 898 F.2d 103, 104 (9th Cir.1989) (per curiam); *United States v. Lambert,* 603 F.2d 808, 809 (10th Cir.1979); *Williams v. United States,* 290 F.2d 217, 218 (5th Cir.1961) (per curiam); *see also United States v. Prince,* 533 F.2d 205, 208 (5th Cir.1976) (applying same principle in bar of proffered Rule 33 motion following plea of nolo contendere); *see generally* 3 Charles A. Wright, *Federal Practice and Procedure* § 556, at 313 (2d ed.1982); *cf. United States v. Cordero,* 42 F.3d 697, 698 (1st Cir.1994) (holding that a defendant, by entering an unconditional plea of guilty, waives any right to challenge his conviction on the basis of earlier, non-jurisdictional rulings). In fine, Rule 33 "applies only to cases in which a trial, either to the court or to a jury, has taken place." *Lambert,* 603 F.2d at 809.

We need go no further. Because Fed. R.Crim.P. 33 cannot be invoked to undermine a conviction predicated upon a guilty plea, we deny appellant's motion to remand. To do otherwise would promote an exercise in futility.

*Affirmed.*

---

**10.** The Fifth Circuit has suggested in dictum that "to avoid delay" a criminal defendant may, alternatively, ask the court of appeals to remand before initiating proceedings to in the district court. *See Fuentes–Lozano,* 580 F.2d at 726. If such an alternative exists at all—a question on which we need not pass—it is available only in cases characterized by exceptional circumstances (including the looming prospect of unusual hardship).