USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2137

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 WILDER MAURICIO MEDINA,

 Defendant, Appellant.

 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS
 
 [Hon. Edward F. Harrington, U.S. District Judge]
 
 

 Before
 
 Selya, Circuit Judge,
 Coffin, Senior Circuit Judge,
 and Boudin, Circuit Judge.
 
 

 Victoria L. Nadel, by Appointment of the Court, for appellant.
 Geoffrey E. Hobart, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, was on brief for
appellee.

January 29, 1999

 
 
 COFFIN, Senior Circuit Judge. After a lengthy
investigation, the government charged appellant Wilder Medina
("Medina") with six counts stemming from a conspiracy to distribute
cocaine. Pursuant to a written plea agreement, Medina pled guilty
to all counts but reserved the right to challenge both the amount
of cocaine attributed to him and his alleged role in the
conspiracy. At sentencing, the district court found that Medina
was responsible for between 15 and 50 kilograms of cocaine, and
enhanced his sentence two levels for occupying a managerial
position in the scheme. He now appeals both findings. We affirm
the court's decision regarding drug quantity, but vacate Medina's
sentence because the basis for the district court's decision that
Medina was a manager is not sufficiently clear for us to engage in
meaningful review.
 I. Background
 Following an investigation spanning the better part of a
year, the government indicted twenty-eight individuals in an
extensive drug conspiracy. The investigation began after Medina
sold an eighth of an ounce of cocaine to a confidential informant
("CI") cooperating with the Drug Enforcement Administration ("DEA")
on November 18, 1994. Later that month, the CI introduced Medina
to DEA Group Supervisor James Soiles ("Soiles"). Soiles promptly
purchased a kilogram of cocaine from Medina, and agreed to purchase
50 kilograms more. Shortly before Medina was supposed to deliver
the shipment, federal officials arrested a number of individuals
close to Medina. Citing those arrests, Medina backed out of the
deal, claiming that two couriers transporting the cocaine from New
York to Boston had been arrested and that there was a "lot of
heat."
 The government expanded its investigation, and obtained
authority first to intercept electronic communications made to
Medina's and his brother's pagers, and later to wiretap both
Medina's and Alvaro Velasquez's ("Velasquez") phones. Shortly
after the wiretaps were authorized, Velasquez, a co-conspirator,
was arrested in a sting operation by the United States Customs
Service in Tampa, Florida, when he attempted to purchase 40
kilograms of cocaine.
 Medina was subsequently observed selling cocaine to a
number of individuals on a variety of occasions and was arrested
along with 22 co-conspirators on October 5, 1995. Pursuant to a
written plea agreement Medina pled guilty to all six counts charged
against him.
 The Presentence Report ("PSR") characterized the
conspiracy as a "loosely formed organization with many participants
who acted as retail distributors of cocaine in various amounts." 
Peppered throughout the PSR were extensive descriptions of Medina's
drug activity, including a five page single-spaced section entitled
"The Medina Branch." Apparently because of the complexity of the
conspiracy and drug transactions, the PSR contained no
recommendation as to the proper drug quantity attributable to
Medina. Instead, it restated the government's position from the
plea agreement that Medina should be held responsible for 15-50
kilograms of cocaine, and calculated the resulting base offense
level. The PSR did, however, conclude that he was an organizer or
leader of the conspiracy, and consequently recommended a four level
sentence enhancement pursuant to the Sentencing Guidelines.
 At the sentencing hearing, Medina objected to both the
drug calculation and the role enhancement. He contended that only
5 to 15 kilograms should be attributable to him, and argued that no
role enhancement was warranted due to a comparison between his
activities and those of his brother Edubin who had received a two
level downward adjustment for his role as a minor participant. 
When the court asked the government whether Medina headed the
conspiracy, the government conceded that Medina was underneath
Velasquez and Alejandro Mourino, "the top two men in the
organization." The government then argued that "[i]f the Court
didn't feel comfortable with a four level role adjustment because
he's not at the very top, [it] wouldn't hear argument from [the
government] that that wasn't appropriate. But [Medina] was
managing other people's activities," so the government proposed a
two level enhancement as a compromise.
 Without elaboration, the court found Medina responsible
for between 15 and 50 kilograms, and enhanced the base offense
level upward two levels, consistent with the government's
compromise. The resulting offense level was 33, and the court
sentenced Medina to 135 months.
II. Discussion
A. Medina's Role in the Conspiracy
 Because it is more troubling, we start with Medina's
challenge to the finding that he was a manager or supervisor.
 The Sentencing Guidelines attempt to calibrate an
individual's sentence with his relative role in a conspiracy. 
Section 3B1.1 of the Guidelines provides for "a range of
adjustments to increase the offense level based on the size of a
criminal organization . . . and the degree to which the defendant
was responsible for committing the offense." U.S.S.G. 3B1.1
comment (background). To this end, the section provides that:
 (a) If the defendant was an organizer or
 leader of a criminal activity that involved
 five or more participants or was otherwise
 extensive, increase by 4 levels.

 (b) If the defendant was a manager or
 supervisor (but not an organizer or leader)
 and the criminal activity involved five or
 more participants or was otherwise extensive,
 increase by 3 levels.

 (c) If the defendant was an organizer, leader,
 manager, or supervisor in any criminal
 activity other than described in (a) or (b),
 increase by 2 levels.

U.S.S.G. 3B1.1. The government bears the burden of proving by a
preponderance of the evidence that a defendant qualifies for such
an enhancement. See United States v. Voccola, 99 F.3d 37, 44 (1st
Cir. 1996). 
 Although the PSR concluded that Medina was an organizer
or leader of an enterprise of more than five individuals, and
subject to a four level increase under 3B1.1(a), the court chose
to apply just a two level enhancement under 3B1.1(c), consistent
with the government's argument that Medina managed others. The
finding that Medina was a manager or supervisor is necessarily
fact-specific. See United States v. Graciani, 61 F.3d 70, 75 (1st
Cir. 1995). Accordingly, the district court's determination will
be afforded considerable deference, and will be set aside only for
clear error. See id.
 This court has addressed the reach of this guideline on
a number of occasions. In order to apply the two level increase
under 3B1.1(c), a court must first determine that there were at
least two participants in the crime. See United States v.
Mitchell, 85 F.3d 800, 813 (1st Cir. 1996). There can be no doubt
that this element was met by the 28-person conspiracy at issue. 
The dispute centers on the other requirement, which mandates a
finding that Medina "exercised control over, or was otherwise
responsible for organizing the activities of, at least one other
individual in committing the crime." United States v. DiSanto, 86
F.3d 1238, 1259 (1st Cir. 1996).
 In many circumstances, the basis for a role-in-the-
offense enhancement will be apparent from the record. When this is
not so, however, the sentencing court, in order to apply such an
enhancement, must make a specific finding which identifies those
being managed "with enough particularity to give credence to the
upward adjustment." United States v. McDowell, 918 F.2d 1004, 1011
(1st Cir. 1990). This requirement is consistent with the well-
known statutory directive that the court must "state . . . the
reasons for its imposition of the particular sentence." 18 U.S.C.
 3553(c); see also McDowell, 918 F.2d at 1012. Without reasonably
specific findings or some satisfactory surrogate in the record, we
are unable to engage in meaningful review to determine whether the
decision was clearly erroneous. See United States v. Van, 87 F.3d
1, 2-3 (1st Cir. 1996). When a district court applies a two level
enhancement under U.S.S.G. 3B1.1(c), we cannot be left to
speculate about the defendant's managerial activities.
 In this case, none of the usual sources provide any
guidance. The sentencing court's statements on the record were
unilluminating. The court's questions attempted to compare Medina
to other defendants, and counsels' replies do not address whom
Medina controlled. We are left to guess whom the court believed
Medina managed, and why only a two level adjustment was justified. 
An examination of the PSR offers equally little assistance. The
PSR concluded that Medina occupied a leadership role in the
conspiracy, but it contains no explicit analysis of Medina's
managerial or supervisory activities. It is possible that the
probation officer believed, albeit erroneously, that detailing all
the sales Medina made to others justified the adjustment. See,
e.g., United States v. Graham, --- F.3d ----, 1998 WL 886768 (D.C.
Cir. Dec. 22, 1998) (noting enhancement not warranted merely on
characterizing defendant as lieutenant or middleman in cocaine
distribution conspiracy); United States v. Sostre, 967 F.2d 728,
733 (1st Cir. 1992) (a finding that defendant played an "essential
role" in drug conspiracy insufficient to warrant enhancement under
 3B1.1).
 Although the sentencing transcript and the PSR provide
inadequate direction, we could affirm if the reasons for the
judge's choice are obvious or if the record as a whole provides an
explanation. See United States v. Quinones, 26 F.3d 213, 219 (1st
Cir. 1994). In this case, however, the voluminous record adds
little clarity. The Murphy affidavit details the minutiae of the
government's surveillance and Medina's drug transactions, but
neither it nor anything else in the record furnishes an obvious
basis for the court's decision that Medina exercised control over
others in the conspiracy.
 In fact, the murkiness of the record is evident by the
government's own arguments. In its brief, the government suggested
that Medina managed his cousin Johnny. At oral argument, the
government argued that, should the case be remanded, it would
produce evidence that Medina managed Edubin. This contradiction
itself highlights the confusion surrounding this issue, and
suggests that the government might be reaching to justify an
enhancement which, while perhaps supportable, was not inevitable
based on this record.
 The decision that another participant in the crime was
managed or supervised by Medina is a determination, in the first
instance, to be made by the district court. We refuse to engage in
the speculation that would be required to determine what Medina was
doing to manage someone else, and who that someone was. 
Consequently, we will remand for resentencing and allow the
district court to redetermine whether Medina's sentence should be
enhanced due to his role in the offense, and, if so, why.
B. Drug Volume Attributed to Medina
 Medina also challenges the sentencing court's finding
that he was responsible for between 15 and 50 kilograms of cocaine. 
 Noting again that the district court did not make
explicit findings, Medina argues that, in order to reach the 15
kilogram minimum threshold, the court must have attributed to him
either the undelivered 50 kilograms or the 40 kilogram transaction
for which Velasquez was arrested in Tampa. He claims that neither
transaction should be included. With respect to the unconsummated
50 kilogram transaction, he contends that he lacked the intent and
capacity to deliver that amount. If that were true, under the
guidelines and our caselaw that amount could not be used to
calculate his sentence. See U.S.S.G. 2D1.1, Application Note 12;
United States v. Wihbey, 75 F.3d 761, 777 (1st Cir. 1996). In his
challenge to the 40 kilograms in Tampa, Medina maintains that the
government had minimal evidence connecting him to that shipment,
and has not shown by a preponderance of the evidence that he was
involved.
 The government, in response, claims that Medina's
challenge misses the mark. The government concedes that it was not
relying on the 50 kilogram transaction in calculating drug
quantity, but it suggests that it tied Medina to the Tampa sting by
a preponderance of the evidence. It goes on to insist that, even
if the 40 kilograms are excluded, the unchallenged portions of the
PSR firmly support the district court's finding that the 15
kilogram minimum threshold has been surpassed. Adding all the
transactions in those paragraphs of the PSR, it correctly asserts
that they total 15.956 kilograms.
 Consequently, the dispute about the 40 kilogram sting is
irrelevant. The unchallenged portions of the PSR provide us with
an independent ground on which to justify our decision. See United
States v. Rosales, 19 F.3d 763, 770 (1st Cir. 1994) (noting that a
court may accept, as true and accurate, any unchallenged facts
contained in the PSR). Although we vacate Medina's sentence due to
insufficient findings regarding his managerial role, we affirm the
court's finding that Medina was responsible for between 15 and 50
kilograms of cocaine.
 Accordingly, Medina's sentence is vacated and the action
is remanded for resentencing.